823 A.2d 664

**STATE of Maryland**

v.

**Deshawn Lamont SMITH.**

**No. 91, Sept. Term, 2002.**

Court of Appeals of Maryland.

May 9, 2003.

528

Gary E. Bair, Solicitor General (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for petitioner.

Geraldine K. Sweeney, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, J.

On February 22, 2001, Deshawn Lamont Smith, respondent, after a bench trial in the Circuit Court for Harford County was convicted of transporting a handgun.[1] Respondent was

---

1. Unless otherwise noted, all statutory references hereafter are to former Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Art. 27 § 36B which stated:

"(b) *Unlawful wearing, carrying, or transporting of handguns; penalties.*—Any person who shall wear, carry, or transport any handgun, whether concealed or open, upon or about his person, and any person who shall wear, carry or *knowingly transport any handgun*, whether concealed or open, in any vehicle traveling upon the public roads, highways, waterways, or airways or upon roads or parking lots generally used by the public in this State shall be guilty of a misdemeanor; . . . . " [Emphasis added.]

Article 27 § 36B was in effect at the time respondent was charged and convicted. The substance of section 36B has been recodified in Maryland Code (2002), § 4–203(a) of the Criminal Law Article. There is no dispute in this case that respondent "transported" the handgun

sentenced to a term of three years of incarceration, with all but 30 days suspended.

On February 23, 2001, respondent appealed his conviction to the Court of Special Appeals. On appeal, respondent asserted that there was insufficient evidence to sustain his conviction. On August 27, 2002, after hearing the case en banc, the intermediate appellate court reversed the decision of the Circuit Court. *Smith v. State*, 145 Md.App. 400, 805 A.2d 1108 (2002).

On December 11, 2002, we granted the State's Petition for Writ of Certiorari. *State v. Smith*, 372 Md. 132, 812 A.2d 288 (2002). The State, petitioner, presents one question for our review:

"Did the Court of Special Appeals incorrectly hold that the evidence was insufficient to sustain the conviction of the lessee driver of a vehicle for transporting a handgun, where the gun was found in the trunk of the car under a jacket belonging to one of the two passengers also in the car?"

We reverse the Court of Special Appeals and answer yes to petitioner's question. We hold that the evidence and reasonable inferences therefrom were sufficient to sustain the conviction of respondent for the crime of transporting a handgun. We shall additionally hold that, generally, a person's status as a owner or lessee/driver of a vehicle can support an inference by a fact-finder that the owner or lessee/driver has knowledge of the contents of the vehicle he or she is operating.[2]

---

found in his rented vehicle, as he was driving along interstate 95 at the time of his arrest; therefore, the core of this appeal rests upon whether respondent "knowingly" transported the handgun.

**2.** The State, in its response to the petition, and in its brief relies solely on the fact that, in its view, inferences as to knowledge made by the trial judge were reasonable, and that they supported the trial court's finding that petitioner had knowledge of the handgun found in his vehicle. Because the issue was presented in that manner, we resolve it upon that basis.

At the trial court the prosecutor did initially make mention of the statutory rebuttable presumption of knowledge, contained in Article 27 section 36B but then modified his argument that "It's certainly a

## I. Facts

We adopt the facts as set forth in the intermediate appellate court's plurality opinion in this case: [3]

"Maryland State Trooper Larry Goldstein testified that around 5:30 on the evening of March 25, 2000, he was working speed enforcement on I–95 in Harford County when he was advised by another trooper to stop a white Buick for speeding. Trooper Goldstein made the stop and parked his vehicle behind the Buick. He approached the vehicle on the driver's side and asked the driver, [respondent], for his driver's license and vehicle registration. There were two passengers in the vehicle, Michael Brandon Foster and Dayvon Smith. At trial, Trooper Goldstein did not recall the positions of the passengers in the vehicle, but

permissible inference...." That provision provides "2. There is a rebuttable presumption that a person who transports a handgun under paragraph (1)(ii) of this subsection transports the handgun knowingly." The statutory presumption only applies to transporting handguns in vehicles. The trial court in its finding made no mention of the statutory presumption, but appears to have relied only upon inferences from the evidence presented.

The State did not rely on the statutory presumption found in Md.Code Article 27, Section 36B (now Md.Code, Art. 27 § 36B (now codified in Maryland Code (2002), § 4-203(a) of the Criminal Law Article)) before the Court of Special Appeals. Nonetheless, the Court of Special Appeals appended a footnote to its plurality opinion in which, while acknowledging that the issue of the constitutionality of the presumption was not before it, and that it was not relying on it, nonetheless gratuitously declared the presumption to be unconstitutional.

In its briefs in this case, the State, in a footnote, remarked as to the existence of the presumption; that the trial court had not relied on it; that the State had not presented or argued it to the Court of Special Appeals; that the plurality opinion of the Court of Special Appeals had declared it unconstitutional; that the State was not relying on presumption in this instant proceeding and that the State had "apparently" abandoned any reliance on the presumption.

Accordingly, we do not address the matter of the constitutionality of the statutory presumption, but address the issues in this case as they were presented to this Court. Our failure to address the statutory rebuttable presumption should not be perceived as reflecting any view of this Court as to the constitutionality of that statutory provision. It simply is not before us.

3. All of the evidence at trial was garnered from the testimony of petitioner's sole witness, Maryland State Trooper Larry Goldstein.

did remember that one of the passengers had been sitting in the rear seat. According to the trooper, when he approached the Buick, he smelled the odor of burnt marijuana. Goldstein returned to his vehicle and checked [respondent's] drivers license and the registration of the vehicle. After calling for backup, Goldstein returned to the Buick and asked [respondent] to exit the vehicle. The trooper told [respondent] that he smelled marijuana. In response [respondent] admitted that he had smoked marijuana before he was stopped.

"When additional police arrived, the officers arrested [respondent] and his companions for the marijuana offense. Goldstein then searched the vehicle incident to the arrest of the men.

"Trooper Slide, one of the troopers who had arrived to assist Goldstein, opened the trunk of the vehicle. He lifted a jacket in the trunk and told Goldstein that he had found a handgun under the jacket. Trooper Goldstein looked into the trunk and saw a handgun in the center [the jacket was then placed back on top of the gun.]

"At trial, Goldstein testified that the vehicle had a fold-down rear seat so that there was direct access to the trunk from the back seat of the vehicle.[4] He also stated that he had not seen any suspicious movement or attempt to hide anything by the passengers.

"Trooper Goldstein removed the handgun from the trunk. The handgun was a silver revolver, a .38 Special with a barrel approximately four inches long. The gun was loaded with five rounds. A subsequent test of the gun determined that it was operable.

---

4. The record reflects that there may have been direct access to the trunk of the vehicle from the backseat. Apparently, the armrest in the back seat was the type that folded up and down, possibly providing someone sitting in the backseat direct access to the trunk space of the vehicle from the backseat. However, there was no testimony adduced at trial about who the handgun belonged to or how it found its way into the trunk, nor was there testimony about the size of the opening, whether the passengers were aware of it, or whether it was locked or open.

"None of the men admitted to owning either the gun or the jacket. One of the passengers, Dayvon Smith, however, later admitted to owning the jacket, and the jacket was returned to him.

"According to Goldstein, [respondent] told him that he lived in Essex, Maryland, that he had rented the Buick, that he had it for a week, and that he was going to New York to return the vehicle.

"The trial court found [respondent] guilty of transporting a handgun. It relied on the fact that [respondent] had rented the car for a week and was its driver. It reasoned that [respondent], as the 'driver and occupant of the car, knew of the gun's presence,' and 'was at least in constructive possession of [it].' " [Some alterations added.][5]

## II. Standard of Review

The standard for appellate review of evidentiary sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 313, 99 S.Ct. 2781, 2785, 61 L.Ed.2d 560, 569 (1979); *Moye v. State*, 369 Md. 2, 12, 796 A.2d 821, 827 (2002); *White v. State*, 363 Md. 150, 162, 767 A.2d 855, 861–62 (2001); *State v. Albrecht*, 336 Md. 475, 478–79, 649 A.2d 336, 337–38 (1994). "Weighing the credibility of witnesses and resolving any conflicts in the

---

5. Specifically, the trial judge, in reaching his verdict stated:

"THE COURT: This was a search—excuse me—a car stop search incident to arrest. Once marijuana was detected-marijuana odor was detected, the gun was found under a jacket apparently owned by one Dayvon Smith, not this defendant, who was an occupant of the vehicle.

"The gun was found in the trunk of the car, the car had been rented by [respondent], apparently for about a week, and [respondent] was driving that vehicle. I do infer under the circumstances that [respondent] as the driver and occupant of the car, knew of the gun's presence, and, therefore, was transporting it. He was at least in constructive possession of the gun in the trunk. I am convinced of those facts beyond a reasonable doubt, so I will find [respondent] guilty of the charge." [Alterations added.]

evidence are tasks proper for the fact finder." *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323, 331 (1998). *See McDonald v. State,* 347 Md. 452, 474, 701 A.2d 675, 685–86 (1997), *cert. denied,* 522 U.S. 1151, 118 S.Ct. 1173, 140 L.Ed.2d 182 (1998). (quoting *Albrecht,* 336 Md. at 478, 649 A.2d at 337); *Binnie v. State,* 321 Md. 572, 580, 583 A.2d 1037, 1040–41 (1991); *Wright v. State,* 312 Md. 648, 541 A.2d 988 (1988). "We give 'due regard to the [fact finder's] findings of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses.' " *Moye,* 369 Md. at 12, 796 A.2d at 827 (quoting *McDonald v. State,* 347 Md. 452, 474, 701 A.2d 675, 685 (1997) (quoting *Albrecht,* 336 Md. at 478, 649 A.2d at 337)). *See* the following recent cases quoting *Albrecht: Anderson v. State,* 372 Md. 285, 291–92, 812 A.2d 1016, 1020 (2002); *Deese v. State,* 367 Md. 293, 305, 786 A.2d 751, 758 (2001); *Galloway v. State,* 365 Md. 599, 649, 781 A.2d 851, 880 (2001); *White,* 363 Md. at 162, 767 A.2d at 861–62. We do not re-weigh the evidence, but "we do determine whether the verdict was supported by sufficient evidence, direct or circumstantial, which could convince a rational trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *White,* 363 Md. at 162, 767 A.2d at 862. A valid conviction may be based solely on circumstantial evidence. *Wilson v. State,* 319 Md. 530, 537, 573 A.2d 831, 834 (1990). The same standard applies to all criminal cases, including those resting upon circumstantial evidence, since, generally, proof of guilt based in whole or in part on circumstantial evidence is no different from proof of guilt based on direct eyewitness accounts. *See Eiland v. State,* 92 Md.App. 56, 607 A.2d 42 (1992), *rev'd on other grounds,* 330 Md. 261, 623 A.2d 648 (1993).

## III. Inference and Deference

The following cases further emphasize a trial judge's or a jury's ability to choose among differing inferences that might possibly be made from a factual situation and the deference we must give in that regard to the inferences a fact-finder may draw. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789, 61

L.Ed.2d at 573 (noting the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw *reasonable inferences* from basic facts to ultimate facts); *Jones v. State*, 343 Md. 448, 460, 682 A.2d 248, 254 (1996) (Involving a probable cause issue the Court stated "it is the trier of fact that must draw the inferences. . . . Consequently, absent clear error in its fact-finding, an appellate court is required, in deference to the trial court, to accept those findings of fact."); *In re Timothy F.*, 343 Md. 371, 379–80, 681 A.2d 501, 504–05 (1996) (in criminal cases the appropriate inquiry is not whether the reviewing court believes that the evidence established guilt beyond a reasonable doubt, but, rather, whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt); *McMillian v. State*, 325 Md. 272, 281–82, 600 A.2d 430, 434–35 (1992) (stating that "The trial court's findings as to disputed facts are accepted by this Court unless found to be clearly erroneous"); *see also Riddick v. State*, 319 Md. 180, 183, 571 A.2d 1239, 1241 (1990).

In *State v. Raines*, 326 Md. 582, 590–93, 606 A.2d 265, 269–70 (1992), we stated:

"This analysis indicates that the Court of Special Appeals credited the Raines's version of the events, one that necessarily mitigated his culpability. Of course, the credibility of the witnesses was a matter for the trial court, as fact finder, not the appellate court, to resolve. Furthermore, the determination of an accused's intention is, in the first instance, for the trial judge, when sitting without a jury, and this determination will not be disturbed on appeal unless clearly erroneous. As noted, the trial court discounted Raines's version of the events. Instead, the court drew an inference based on other evidence offered at trial that the killing was intentional, deliberate and premeditated. This, the trial court, as fact finder, has the exclusive right to do. The Court of Special Appeals erred in conducting its own independent credibility analysis and in rejecting the trial court's finding of facts.

"... This Court has noted that the trier of fact may infer the intent to kill from the surrounding circumstances:

'[S]ince intent is subjective and, without the cooperation of the accused, cannot be directly and objectively proven, its presence must be shown by established facts which permit a proper inference of its existence.'

. . .

"... Raines's actions in directing the gun at the window, and therefore at the driver's head on the other side of the window, permitted an inference that Raines shot the gun with the intent to kill. Relying upon that inference, the trial judge could rationally find, beyond a reasonable doubt, that the killing was wilful, deliberate and premeditated so as to render Raines guilty of first degree murder.

"Although a different trier of fact may have viewed the evidence as establishing second degree murder instead of first degree murder, the trial court's decision was not clearly erroneous. The Court of Special Appeals erred in substituting its judgment for that of the trial court on the evidence." [Citations omitted.]

While in *Raines,* and in some of the other cases, the exact issues relate to the proof of intent in respect to the type of homicide, we, and the Court of Special Appeals, have held that even in murder cases, intent may be established by the use of rational inferences from the underlying evidentiary facts. In the case at bar, knowledge, not intent, was found by the trial judge from reasonable inferences from the undisputed facts. The cases that hold that intent in murder cases can be established by inference support our holding that knowledge can be established in the same manner. While the issues of intent in murder cases and also possession and control in drug cases are different than knowledge in "transporting" cases, the use of evidentiary inferences is essentially the same regardless of the type of case and the evidentiary issue involved.

There are numerous Court of Special Appeals cases consistent with the cases of this Court. In *Johnson v. State*, 142 Md.App. 172, 201, 788 A.2d 678, 694–95 (2002), that court stated:

"The evidence against Johnson on which his marijuana possession conviction was based, viewed in a light most favorable to the State, supports a rational inference that he had knowledge and control of the contraband seized. Therefore, the evidence supports his convictions. Said in other words, we are fully convinced that the admissible evidence adduced at trial either supported a rational inference of, or demonstrated directly or circumstantially, the facts to be proved, from which any fact-finder could fairly have been convinced, beyond a reasonable doubt, of appellant's possession of the marijuana seized, and, therefore, of his guilt for possession of marijuana. Thus, we affirm appellant's conviction for possession of marijuana." [Citations omitted.]

In *Hall v. State*, 119 Md.App. 377, 705 A.2d 50 (1998), after the appellant claimed that she did not have knowledge of the drugs found in her home, the Court of Special Appeals discussed that it is the fact-finder's role to resolve conflicts in evidence. The intermediate appellate court stated:

"In performing this fact-finding role, the jury [or trial judge] has authority to decide which evidence to accept and which to reject....

"... In order to sustain a conviction for possession the evidence must show directly or support a rational inference not only that the accused had knowledge of the presence and illicit nature of the charges, but that the accused did in fact exercise some dominion or control over the contraband." [Citations omitted.]

[Alteration added.]

*Id.* at 393–94, 705 A.2d at 58. *See Mercedes–Benz of North America, Inc. v. Garten*, 94 Md.App. 547, 618 A.2d 233 (1993) (recognizing that the appellate court must assume the truth of all the evidence, and all of the favorable inferences fairly

deducible therefrom, tending to support the factual conclusions of the lower court).

In *Rowe v. State,* 41 Md.App. 641, 643, 398 A.2d 485, 487, *cert. denied,* 285 Md. 733 (1979), the Court of Special Appeals stated that:

"A presumption is a legally required inference. An inference is a factually permissible presumption. Even if we agree that the negative presumptions in this case either disappeared or never arose, there remains an apparent inference from the mode as well as the cause of the death, that-absent the excuse-there was malice in the doing."

In *Gilbert v. State,* 36 Md.App. 196, 205–09, 373 A.2d 311, 317–19 (1977), also a homicide case, the Court of Special Appeals emphasized the ability of the fact-finder to make inferences, and stated:

"The mere creation of a genuine doubt as to a fact is enough to dissipate the *presumption* of that fact, but that mere doubt is not enough to foreclose the permitted *inference* of that fact. The doubt simply places the question in the lap of the fact finder. . . .

. . .

". . . the fact finder may infer the non-existence of the condition. He need not infer it, but he may. . . .

. . .

"The fact finder need not draw the permitted factual inference. . . . To the extent to which the fact finder believes the defensive testimony, it is unlikely that he will draw the permitted inference beyond a reasonable doubt. To the extent to which the defensive testimony is disbelieved, the likelihood that the inference will be drawn becomes proportionately greater. . . .

". . . The prerogative of disbelief resides always in the fact finder."[Citations omitted.]

*See also Smith v. State,* 6 Md.App. 114, 250 A.2d 272 (1969) (stating that the Court cannot reverse a judgment of the lower court unless it is shown that there was no legally sufficient evidence, or proper inferences therefrom, from which that court could find the accused guilty beyond a reasonable doubt); *cf.* Maryland Rule 8–131(c), stating that "When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will *give due regard to the opportunity of the trial court* to judge the credibility of the witnesses."(emphasis added).

Our sister states have also spoken on the proper deference due a the fact-finder's inferences. In *Commonwealth v. Russell,* 46 Mass.App.Ct. 307, 705 N.E.2d 1144 (1999), the defendant asserted that the judge erred because the evidence of his guilt was entirely circumstantial and that there was "no actual proof" that he was responsible for the call by the third person to his wife in violation of a no contact restraining order. The defendant also argued that "the evidence was equally susceptible of an explanation consistent with his innocence." *Id.* at 308, 705 N.E.2d at 1145. That court in making its ruling stated that:

> "[W]e view the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth . . .:
>
> '. . . An inference drawn from circumstantial evidence "need only be reasonable and possible; it need not be necessary or inescapable." ' . . .
>
> "Moreover, the evidence and the permissible inferences therefrom need only be sufficient to persuade 'minds of ordinary intelligence and sagacity' of the defendant's guilt. Fact finders are not 'required to divorce themselves of common sense, but rather should apply to facts which they find proven such reasonable inferences as are justified in the light of their experience as to the natural inclinations of human beings.' To the extent that conflicting inferences

are possible from the evidence, it is for the fact finder to resolve the conflict.

. . .

"... The possibility of raising conflicting inferences from the evidence does not preclude allowing the fact finder to determine where the truth lies."

*Id.* at 308–10, 705 N.E.2d at 1145–46 (citations omitted).

In *State v. Tangari,* 44 Conn.App. 187, 197–98, 688 A.2d 1335, 1341 (1997), that court stated:

" 'We must also acknowledge in our review of the evidence that it is the right and the duty of the [fact finder] to draw reasonable and logical inferences from the evidence.... Moreover, the [fact finder] may draw inferences on the basis of facts that it finds as a result of other inferences.... In viewing evidence which could yield contrary inferences, the [fact finder] is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the [fact finder's] function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical....We do not sit as [an alternate fact finder] who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the [fact finder's] opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility.'

" 'In considering the evidence introduced in a case, [fact finders] are not required to leave common sense at the courtroom door ... nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct.' " [Citations omitted.][Alterations in original.]

In *Commonwealth v. Costa–Hernandez,* 802 A.2d 671, 674 (Pa.Super.2002), in a case involving whether the defendant

was driving a motor vehicle, that court stated that "The Commonwealth need not produce direct evidence of driving, such as testimony that a defendant was seen driving, but may instead rely on circumstantial evidence creating the inference that the vehicle had been in motion in order to meet its evidentiary burden." Later, that court opined that the:

"Appellant is essentially asking this court to substitute our judgment for the fact-finder's. We may not, however, weigh the evidence and substitute our judgment for the fact-finder's, and the question of any doubt regarding the facts and circumstances established by the Commonwealth is for the fact-finder to resolve unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. The fact-finder is free to believe all, part, or none of the evidence presented."

*Id.* at 675 (citations omitted).

In *People v. Caban*, 251 Ill.App.3d 1030, 1033–35, 191 Ill. Dec. 435, 623 N.E.2d 1025, 1028–29 (1993), in a sufficiency of the evidence case, that court stated that the:

". . . facts are sufficient to establish a 'rational connection' between recent possession of property and participation in a burglary if the inference that defendant obtained the items by burglary is not unreasonable. . . .

"The fact that a defendant is discovered in recent, unexplained possession of the proceeds of a burglary can support the inference that the defendant participated in the burglary itself, as well as the inference that the property was delivered to him some time after the burglary. While both inferences may be plausible, the likelihood of the former increases with the proximity in time and place to defendant's discovered possession of the stolen items.

. . .

". . . [T]he facts presented to the fact finder were sufficient to permit, though not to mandate, an inference that defendant had acquired the proceeds in question as a result of his

participation in the underlying burglary." [Citations omitted.]

In *State v. Bencivenga*, 137 Wash.2d 703, 974 P.2d 832 (1999), the Supreme Court of Washington defined the proper role of an appellate court when considering the inferences relied upon by a fact-finder, emphasizing that appellate acceptance of trial court findings as to inferences depended upon whether any rational trier of fact could have made the inference. In its discussion it also pointed out that a determination of the reasonableness of an inference was primarily for the fact-finder. Specifically, that court stated:

"[It] would invade the province of the fact finder by appropriating to the appellate court the role of factually determining the reasonableness of an inference. Just because there are hypothetically rational alternative conclusions to be drawn from the proven facts, the fact finder is not lawfully barred against discarding one possible inference when it concludes such inference unreasonable under the circumstances.

"Nothing forbids a jury, or a judge, from logically inferring intent from proven facts, so long as it is satisfied the state has proved that intent beyond a reasonable doubt. An essential function of the fact finder is to discount theories which it determines unreasonable because the finder of fact is the sole and exclusive judge of the evidence, the weight to be given thereto, and the credibility of witnesses. That the crime here charged is attempted burglary does not change the analysis. Intent to attempt a crime also may be inferred from all the facts and circumstances. What constitutes a substantial step is also a factual question. The role of the appellate court is to determine whether or not any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found, beyond a reasonable doubt, all the essential elements of the crime....

"... ( ...'... If the inferences and underlying evidence are strong enough to permit a rational fact finder to find guilt beyond a reasonable doubt, a conviction may be properly

based on 'pyramiding inferences.'). The broad statement of the Court of Appeals that 'an inference should not arise where there are other reasonable conclusions that would follow from the circumstances,'... is correct; however, it is the province of the finder of fact to determine what conclusions reasonably follow from the particular evidence in a case."

*Id.* at 708–11, 974 P.2d at 834–36 (citations omitted) (alteration added).

In *Robertson v. Commonwealth,* 31 Va.App. 814, 820, 525 S.E.2d 640, 643 (2000), the Court of Appeals of Virginia stated:

"On review of a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth, the prevailing party, and grant to it all reasonable inferences fairly deducible therefrom. 'The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict, and will not be disturbed on appeal unless plainly wrong or without evidence to support it.' " [Citations omitted.]

In *Hunley v. Commonwealth,* 30 Va.App. 556, 518 S.E.2d 347 (1999), the defendant contended that the evidence failed to establish that he was aware of the presence of the drugs inside the bag he was holding, when the person he was with admitted ownership of the drugs. In challenging his conviction for possession, the defendant further argued that his companion's admitted ownership of the drugs rebutted the inference of knowledge which arose from his possession of the bag in which the cocaine was found. The Court of Appeals of Virginia disagreed and held that " 'Possession of a controlled substance gives rise to an inference of the defendant's knowledge of its character.' " *Id.* at 562, 518 S.E.2d at 350 (internal citation omitted). That court went on to state that "Knowledge may also be proven 'by evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of the narcotics at the place where they were found.' " *Id.* at 562–63, 518 S.E.2d at 350 (citation omitted). Finally, that court opined that "However, when the

trier of fact accepted an inference favorable to the Common-wealth and the inference was reasonable and justified by the evidence, *an appellate court is not at liberty to adopt the opposite inference.* . . . The fact finder was entitled to disbe-lieve any or all testimony of the witnesses." *Id.* at 563–64, 518 S.E.2d at 351 (emphasis added).[6]

## IV. Discussion

### A.

██ Respondent was convicted of transporting a handgun in violation of section 36B. The language of the statute pro-vides that it is prohibited to *"knowingly* transport any hand-gun, whether concealed or open, in any vehicle traveling upon the public roads, highways, . . . generally used by the public in this State." (emphasis added). The statute's prohibitions are not limited to owners of handguns, but applies, generally to anyone knowingly transporting a handgun. Respondent sub-mits that the State failed to meet its burden of proving, beyond a reasonable doubt, that respondent "knowingly trans-ported a handgun" as he was returning the rental vehicle to New York. During his argument on the motion for judgment of acquittal, respondent proffered that:

> "Certainly it's been shown that [respondent] was driving the vehicle. The question really comes down to whether they [prosecutors] have shown that he knowingly transport-ed this handgun.

> "Basically he's one of three occupants in the car. The handgun is in the trunk of the car out of the sight of the driver. It is concealed. When the trunk is opened by the police, under a jacket which belonged to one of the other occupants of the car, there is found a handgun. There is no

6. When discussing burdens of proof and presumptions in regards to satisfying the burden of producing evidence, specifically regarding directed verdicts, *McCormick on Evidence,* § 338 at 418–19 (5th ed. John W. Strong, ed.) (West.1999) stated that "in the last analysis the judge's ruling must necessarily rest on her individual opinion, formed in the light of her own common sense and experience, as to the limits of reasonable inference from the facts proven."

fingerprint testing done to establish whose hand was ever on the gun, other than the officer who picked up the gun. So they really have made no connection between the handgun and [respondent].

"There is not a single fact that establishes his knowledge of that handgun. They can connect [respondent] to the vehicle, he is the driver of the vehicle, but they need not connect him to the handgun." [Alterations added.]

Respondent noted that the Buick he was driving had three occupants, at least two of whom, if not all three, could have had access to the trunk.[7] Respondent also notes that because the handgun was found lying underneath a jacket in the trunk, which Dayvon Smith, a passenger, later claimed as his own, makes it probable that it was Dayvon Smith who put the handgun in the trunk. Further, respondent argues that it would be only speculation to claim that respondent knew of his passenger putting the handgun in the trunk.

Petitioner contends that the evidence supports the trial judge's finding that respondent knew of the handgun's presence in the vehicle. Specifically, petitioner relies upon the direct evidence that respondent was the driver and lessee of the Buick, that respondent was returning the vehicle to New York, *i.e.,* transporting it and its contents, that the handgun was not concealed in any way other than the placement of the jacket, that the handgun was merely lying on the floor in the trunk and that a passenger later admitted to owning the jacket and no one admitted to owning the gun. Therefore,

---

7. It was discussed at oral argument how most vehicles, including Buicks from 1999, have a remote trunk open button on the keys to the vehicle and/or a latch or button in the compartment of the vehicle itself, either on the floor next to the driver's seat or in the glove compartment, to open the trunk. Respondent argues that the trunk could have been opened via one of these methods and one of the two passengers could have put the handgun in the trunk without his knowledge. We emphasize that there was absolutely no evidence that such an occurrence did happen and the trial judge drew no such inferences in his findings. There is also absolutely no evidence that any of the passengers were ever in or about the vehicle outside the presence of the respondent. In the normal course of events, an owner or lessee/driver would be aware of the opening of the trunk of a vehicle in which he is situated.

above all else, petitioner proffers that what the direct evidence does support is that respondent had both "ownership," as he was the person who had rented the vehicle, and control of the vehicle and its contents. Petitioner claims that it necessarily follows that the trial judge properly made the permissible inference that, based upon this direct evidence, respondent had knowledge of the handgun in the vehicle.

## B.

After hearing the case en banc, as indicated *supra*, the Court of Special Appeals reversed respondent's conviction; however, there were five reported opinions in this case, each reflecting a different rationale for holding that there either was or was not sufficient evidence to support respondent's conviction. The seven judges who voted to reverse were not in agreement about why the evidence was insufficient to support respondent's conviction. Essentially, the plurality opinion approached the issue in the case *sub judice* by discussing the concepts of "equal access" and "greater nexus," both concepts used when evaluating the evidence in possession of controlled dangerous substance cases. The plurality ultimately held that:

> "[A] person's status as both the driver and the owner or lessee of a vehicle supports an inference that the person had knowledge of the presence of contraband in the vehicle that is sufficient to convict, except when there is evidence indicating that a passenger had a greater nexus to the contraband."

*Smith,* 145 Md.App. at 402–03, 805 A.2d at 1110.

The three judges who concurred in the result only did not rely upon the "equal access" or "greater nexus" concepts, but rather looked to the Court's decision in *Wilson v. State,* 319 Md. 530, 573 A.2d 831 (1990), involving a conviction solely upon circumstantial evidence where we stated that although a conviction may rest on circumstantial evidence alone, it will not be "sustained unless the circumstances, taken together,

are inconsistent with *any reasonable hypothesis of innocence*" (emphasis added).[8] The plurality concluded that:

> "[T]he location of the gun does suggest that either the passenger placed the gun there, and then put his coat on top, or that the gun fell out of the passenger's coat after both were placed in the trunk. . . . We are persuaded . . . by the location of the gun underneath the coat, which suggests common ownership of the gun and the coat.
>
> . . .
>
> " . . . The inference was neutralized by the greater nexus between the gun and the passenger."

*Smith,* 145 Md.App. at 425–26, 805 A.2d at 1124.

■■ It was at this point that the plurality of the Court of Special Appeals strayed from its appellate function and began to weigh the evidence as if it was the fact-finder. The primary appellate function in respect to evidentiary inferences is to determine whether the trial court made reasonable, *i.e.,* rational, inferences from extant facts. Generally, if there are evidentiary facts sufficiently supporting the inference made by the trial court, the appellate court defers to that fact-finder instead of examining the record for additional facts upon which a conflicting inference could have been made, and then conducting its own weighing of the conflicting inferences to resolve independently any conflicts it perceives to exist. The

---

8. We fail to see that there was solely circumstantial evidence in this case. As we perceive the evidence, there was both direct and circumstantial evidence. The fact that the gun was in respondent's leased car is direct evidence. That he was transporting the gun and the car is direct evidence. The fact that the owner/lessee and driver of the car is generally in control of the car, including access to the trunk is direct evidence. The fact that the passengers did not claim the gun is direct evidence.

Black's Law Dictionary 461 (6th ed.1990) defines "direct evidence" as "Evidence, which if believed, proves existence of fact in issue without inference or presumption." Black's goes on to define "circumstantial evidence" as "Evidence of facts or circumstances from which the existence or nonexistence of fact in issue may be inferred. Inferences drawn from facts proved." Black's Law Dictionary at 243.

·resolving of conflicting evidentiary inferences is for the fact-finder.

Generally, the other concurring judges concluded that a rational fact-finder could not be convinced beyond a reasonable doubt of respondent's guilt because all three occupants of the vehicle might have had access to the trunk and that the handgun was covered by a jacket. Therefore, according to those judges, it was a "reasonable possibility" that the handgun was placed in the trunk by one of the passengers and covered with a coat, without respondent's knowledge.[9]

Five judges dissented, all joining each of the three dissenting opinions. The first dissent undertook a detailed historical review of sufficiency of the evidence cases and concluded that the United States Supreme Court's *Jackson v. Virginia* standard is the applicable standard in sufficiency cases. This dissent also stated that the *Wilson* principle applicable to cases relying solely upon circumstantial evidence "has no practical vitality" and does not apply in the case *sub judice.* This dissent stated that there was sufficient direct evidence to support the trial judge's inferences in this case that led him to conclude that respondent knew the handgun was in the vehicle.

The second dissent focused heavily upon respondent's knowledge of the handgun, not whether he had direct, equal or greater access to the handgun. This opinion questioned the value, if any, of the equal access and greater access rules beyond possession cases.

The final dissent noted "additional reasons why [respondent's] conviction should be affirmed." *Smith,* 145 Md.App. at 453, 805 A.2d at 1139 (alteration added). Again, the dissent

---

9. The issue in this case involving both direct and circumstantial evidence is not whether there was a "reasonable possibility" that one of the passengers may have placed the gun in the trunk. The correct issue is whether from the various permissible inferences from uncontested facts (there were no contested facts) it was rational for the trial judge to have found that respondent had knowledge that he was transporting a handgun—whoever it belonged to—or even if it was without an owner at the time.

questioned the applicability of the doctrines used by the plurality to reach its holding and, focusing upon policy reasons,[10] noted how "the permissive inference that [respondent] had knowledge of the presence of the handgun is even stronger than the inference that it was his gun." *Id.* at 456, 805 A.2d at 1141 (alteration added).

## C.

As we indicated in the preceding paragraphs, the analysis in this case has primarily revolved around case law from this Court and other jurisdictions pertaining to possession, as opposed to simple knowledge of differing forms of contraband. We agree that such cases might assist the analysis of cases involving transporting a handgun, because to prove possession in those types of cases, actual or constructive dominion or control over the contraband must be proven and knowledge, generally, may be evidence in the determination of dominion and control. As the plurality opinion of the Court of Special Appeals stated, "What this case turns on, and what CDS possession cases often turn on is whether the evidence is sufficient *to allow an inference* that the defendant had knowledge of the contraband." *Smith,* 145 Md.App. at 407, 805 A.2d at 1112 (emphasis added).

---

**10.** This dissent, authored by Chief Judge Murphy, noted the joint constructive possession doctrine and how it is "necessary to prevent a 'privileged sanctuary for the storage of illegal contraband,' and without that doctrine, '[s]imply by storing contraband in a place controlled by more than one party, a spouse, roommate, partner, would render all impervious to the prosecution.' " *Smith,* 145 Md.App. at 456, 805 A.2d at 1141 (quoting *Commonwealth v. Macolino,* 503 Pa. 201, 210, 469 A.2d 132, 136 (1983)).

Chief Judge Murphy is correct, because, under respondent's theory, if conflicting inferences might possibly be made, a trial judge would not be permitted to choose between them or must select an inference consistent with innocence and thus possession of contraband could be immunized merely by placing it where conflicting inferences of control or knowledge might exist. Such a position would turn on its head the traditional deference due the trier of fact when he or she chooses among differing inferences that might possibly be made from the same factual situation.

It is the trial judge's inferences that we especially focus upon in the case *sub judice.* One of the dissenting opinions in this case stated:

"In other words, it is not a question of which occupant was the gun's owner; all occupants could have had knowledge of the gun. The question is the strength of the inference to be drawn that [respondent] did have knowledge; there are no inferences pointing in the opposite direction. I assume the majority would have held the evidence was sufficient if [respondent] had been the sole occupant of the vehicle. The presence of others does not affirmatively show that [respondent] did not have knowledge; it affects whether the inference of knowledge is sufficiently strong to support a conviction."

*Smith,* 145 Md.App. at 446, 805 A.2d at 1135 (alterations added). That statement more properly identifies the determinative issue and suggests that, in cases involving statutes of the type here, possession and control standards of simple possession cases, even in joint possession and control situations, are not necessary elements (although they may be relevant facts) in respect to the offense of transporting. The issue in the case *sub judice* is not who possessed or owned, or even controlled the handgun, but whether respondent was knowingly transporting the handgun.

■ We hold that the status of a person in a vehicle who is the driver, whether that person actually owns, is merely driving or is the lessee of the vehicle, permits an inference, by a fact-finder, of knowledge, by that person, of contraband found in that vehicle. In other words, the knowledge of the contents of the vehicle can be imputed to the driver of the vehicle. That inference in the case *sub judice,* based upon the direct and circumstantial evidence presented, would permit a fact-finder to be convinced beyond a reasonable doubt that respondent had knowledge of the handgun in the vehicle.

In a recent string of cases, albeit relating to search or probable cause issues, this Court has made clear that owners/drivers and passengers of vehicles are to be treated differ-

ently. Even though this body of case law, discussed *infra*, involved defendant passengers, not owners/drivers, and different crimes, it, nonetheless, is relevant to our analysis in this case. In the case *sub judice*, the difference is that we are now faced with a case where the driver, not the passenger, of a vehicle is the person convicted of the crime. These "passenger" cases support our holding, even in the sufficiency context of this case, regarding the reasonable inferences implicating respondent in the charges in the case at bar. As seen *supra*, and *infra*, our holding finds additional support in federal and out-of-state case law.

In *State v. Wallace*, 372 Md. 137, 812 A.2d 291 (2002), albeit as dicta, the Court very recently opined that owners/drivers of vehicles are perceived to have heightened control over the contents of their vehicles. In reaching our holding, we discussed the case law from this State and others supporting the distinction between drivers and owners and passengers of vehicles. In *Wallace*, the issue was whether probable cause existed to search a person who was not the owner/driver of a vehicle, where a drug detection dog alerted generally to the presence of contraband in that vehicle. We stated that the canine sniff of the perimeter of the vehicle and the subsequent positive scan to contraband somewhere in the vehicle, without other particularized suspicion as to a particular passenger, was insufficient to establish probable cause to search that non-owning, non-driving passenger for possession of a controlled dangerous substance.

To reach our holding in *Wallace*, we considered our case of *Pringle v. State*, 370 Md. 525, 805 A.2d 1016 (2002), cert. granted, —— U.S. ——, 123 S.Ct. 1571, 155 L.Ed.2d 311 (2003), which involved probable cause to arrest a passenger after drugs were found in the vehicle. Again, we made reference to the fact that there was no probable cause to arrest Pringle who was not the *owner or driver of the vehicle*, but a mere passenger. In *Wallace*, 372 Md. at 150, 812 A.2d at 299, referring to the facts present in *Pringle*, we opined that "the evidence might have constituted probable cause to arrest the *owner or the driver* of the vehicle" (emphasis added). In

*Pringle,* we relied on our holdings in *Livingston v. State,* 317 Md. 408, 564 A.2d 414 (1989) and *Collins v. State,* 322 Md. 675, 589 A.2d 479 (1991), both cases where we emphasized that in neither case was the person who had been arrested the owner or driver of the vehicle, implying that had the owner/driver been arrested the outcome might have been different.[11]

In *White v. State,* 363 Md. 150, 767 A.2d 855 (2001), drugs were found in a sealed box in the trunk of a vehicle and we held that there was insufficient evidence to convict the passenger because he lacked a possessory right in, or control over, the vehicle. We did state, however, that the *driver* arguably knew that the cocaine was in the trunk, thus emphasizing that the driver of a vehicle stands in different shoes than a mere passenger.

These holdings reflect not only that owner/drivers of vehicles are subject to a different analysis, but also that that statute may support stronger inferences in such situations regarding an owner/driver's participation in an alleged crime involving the transportation of contraband. As both parties to the case note, and our research has affirmed, there are no holdings from this Court directly on point, however, case law from other jurisdictions is instructive.

Federal courts, referring to knowledge, have upheld convictions of owners/drivers of vehicles for possession of contraband, where passengers were also present in the vehicle. In *United States v. Lochan,* 674 F.2d 960 (1st Cir.1982), Lochan was driving a vehicle stopped for speeding and the passenger

---

11. In *Wallace,* when discussing *Collins* and *Livingston,* we cited the case of *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948), and noted that although *Di Re* was not factually similar, it guided our analysis of whether the defendant passenger in *Wallace* was subject to a lawful search pursuant to the Fourth Amendment. In Di Re, the issue was whether merely being a passenger of a car involved in criminal activity, without more, caused that passenger to lose his right to be free from a search of his person. The Supreme Court held that it did not. However, in that case, the driver of the car *was* subject to arrest and search. In the case *sub judice,* as in *Wallace,* what *Di Re* supports is that passengers and drivers of cars may have a different status.

of the vehicle was the vehicle's owner, Junior Fraser. Upon searching the trunk, the police officers discovered several hollow spaces behind the spare tire and then several packages of hashish located therein. Lochan argued there was insufficient evidence to establish that he knowingly possessed the hashish. The First Circuit rejected his argument and opined that: "Knowledge may be inferred from possession, that is, dominion and control over the area where the contraband is found. Drivers generally have dominion and control over the vehicles they drive." *Id.* at 966 (citation omitted). Even though the owner of the vehicle was present as the passenger, the fact that Lochan was the driver sufficed for that court to hold that because he was driving the vehicle the evidence was sufficient to sustain his conviction.

In *United States v. Giraldo*, 80 F.3d 667 (2d Cir.1996), three men were convicted of various narcotics and firearms offenses resulting from an attempted sale of narcotics. On appeal, all three defendants challenged the sufficiency of the evidence to support their convictions of 18 U.S.C. § 924(c), a federal statute governing using and carrying a firearm during and in relation to narcotics trafficking. In assessing the sufficiency of the evidence, the Second Circuit held that the evidence was not sufficient to support the conviction of the front seat passenger, Gilberto Giraldo, because, as that court stated:

> "The difficulty with respect to Giraldo is that the government presented no evidence that he *knew* the gun was present. There was no evidence to suggest that the Pontiac belonged to Giraldo. For example, he was not the driver, and he did not have in his possession any documents of ownership."

*Id.* at 677 (emphasis added). After concluding that there was not sufficient evidence from which the "jury could reasonably infer that Giraldo *knew* there was a gun in the car," that court went on to address the sufficiency of the evidence to support the conviction of Andres Emilio Fermin, the driver of the vehicle used in the narcotics transaction. *Id.* at 677 (emphasis added). The court held:

"As to Fermin, the evidence was sufficient to support his conviction of carrying a firearm in connection with the drug transaction. There is no question that the gun was brought to the meeting site in the Pontiac. The gun was within easy reach of Fermin, and he was, at the very least, the custodian of the car. In addition, at the time of his arrest he had a billfold containing the Pontiac's registration and insurance documents.... It was permissible for the jury to *infer* from Fermin's possession of the car, its keys ... that the car belonged to Fermin, and that Fermin had full *knowledge* of the car's contents."

*Id.* (emphasis added). Clearly, in its analysis, the Second Circuit, in respect to knowledge of contraband, distinguished between drivers and passengers of cars.

In *United States v. Dixon,* 460 F.2d 309 (9th Cir.1972), *cert. denied,* 409 U.S. 864, 93 S.Ct. 157, 34 L.Ed.2d 112 (1972), the Ninth Circuit affirmed the conviction of a driver, where 30 pounds of marijuana were found hidden in the trunk and beneath the rear seat. The Ninth Circuit stated that: "the simple act of driving a loaded car provides a substantial basis for a conclusion of knowledge." *Id.* at 309. In *United States v. Westover,* 511 F.2d 1154, 1157 (9th Cir.1975), the Ninth Circuit again noted that "the jury could reasonably infer that [the driver] knew of the trunk's contents." (alteration added). *See also United States v. Ascolani–Gonzalez,* 449 F.2d 159 (9th Cir.1971) (stating that the act of driving a car laden with concealed contraband provides a substantial basis for the jury's inference that the defendant driver had knowledge of the contraband); *United States v. Sutton,* 446 F.2d 916 (9th Cir.1971), *cert. denied,* 404 U.S. 1025, 92 S.Ct. 699, 30 L.Ed.2d 675 (1972) (holding that driving and being in a possession of car was sufficient to establish knowledge of contraband concealed in a tire).

In *United States v. Whitfield,* 629 F.2d 136 (D.C.Cir.1980), Whitfield was the owner and driver of a vehicle containing a front seat passenger that was stopped by the police. The police officers discovered two loaded guns, one under each side of the front seat, and a paper bag containing packages of

heroin in the trunk. This evidence was held sufficient to convict the owner/driver, but not the passenger. The Court stated: "The jurors could conclude that Whitfield, as the owner and operator of the car, had control over its contents." *Id.* at 143.

In *State v. Brown*, 915 S.W.2d 3 (Tenn.Crim.App.1995), the owner and driver of a vehicle was convicted of possession of cocaine with intent to sell after a police officer observed a passenger throw two bags of cocaine from the vehicle. Although that court reversed Brown's conviction due to improprieties in the admission of evidence, it did hold in denying an alternate insufficiency claim, that the evidence was sufficient to sustain the conviction. In rejecting Brown's argument that the evidence showed only his mere presence in an area where drugs were found and his being with a person who controlled the drugs, the court stated that "Knowledge may be inferred from control over the vehicle in which the contraband is secreted" and that the jury could infer knowledge and possession from the defendant's ownership of the vehicle. *Id.* at 7. The court placed special emphasis on the fact that "The defendant owned the car out of which the passenger tossed the cocaine." *Id.* at 8.

In *Young v. State*, 564 N.E.2d 968 (Ind.App.1991), that court held that the evidence was sufficient to sustain Young's conviction for possession of cocaine. Even though Young was not proven to be the owner of the vehicle and had a passenger in the vehicle with him when he was stopped, the Indiana Court of Appeals stated that "[c]onstructive possession of items found in an automobile may be imputed to the driver of the vehicle." *Id.* at 973.

In *Lombardo v. State*, 187 Ga.App. 440, 370 S.E.2d 503 (1988), a factually similar case, Lombardo was driving a leased vehicle, with a companion, and was stopped for speeding. After consenting to a search, cocaine was found hidden in the trunk of the vehicle. Lombardo contended that the evidence was insufficient to convict him of possession of the contraband because the passenger had "equal access" to the trunk of the

vehicle. The Georgia Court of Appeals stated: "there was no evidence that anyone other than the defendant, the driver and lessee of the car, had access to the keys required to open the trunk of the automobile where the contraband was found." *Id.* at 442, 370 S.E.2d at 505. That court found it of special importance to emphasize that Lombardo was the driver and lessee of the vehicle.

In *Hammins v. State*, 439 So.2d 809 (Ala.Crim.App.1983), the Alabama Court of Criminal Appeals stated that mere presence in a vehicle containing contraband is insufficient to sustain a conviction for possession, however, because Hammins was the driver and owner of the vehicle an inference could be drawn that he had knowledge of the marijuana found inside of the vehicle. That court focused on the fact that Hammins:

> "As the driver of the automobile, had complete possession, dominion, and control over the area where the contraband was found, namely, the trunk of the vehicle. It is highly unusual for anyone to have access to the trunk of a vehicle without the driver's knowledge."

*Id.* at 810. *See Commonwealth v. Gizicki*, 358 Mass. 291, 264 N.E.2d 672 (1970) (where a machine gun was found in the trunk of a car driven by Powlicki). In *Gizicki*, the Supreme Court of Massachusetts said: "The motions for directed verdicts on the indictment charging that the defendants carried under their control in a vehicle a machine gun without a license so to do were properly denied. Powlicki's ownership, operation and occupying of the vehicle justified his conviction." *Id.* at 297, 264 N.E.2d at 676; *and see Commonwealth v. Valentin*, 55 Mass.App. 667, 671, 774 N.E.2d 158, 161 (2002) (discussing how it is settled that requisite knowledge, power and intent to exercise control over a firearm may be shown by " 'presence, supplemented by other incriminating evidence' " and how in that case the gun was discovered in a car the defendant was driving). *See also Dodson v. State*, 341 Ark. 41, 14 S.W.3d 489 (2000) (noting that while there was joint occupancy of the automobile, Mr. Dodson exercised dominion and control over the vehicle in that he was the driver); *Byars*

*v. State,* 259 Ark. 158, 533 S.W.2d 175 (1976) (stating that it was undisputed that Byars had control of the automobile in which the marijuana was hidden as he was its driver and sole occupant); *Commonwealth v. Gray,* 5 Mass.App. 296, 299, 362 N.E.2d 543, 545 (1977) (where in the context of an issue as to the propriety of instructions, that court held that: "Knowledge of the presence of the weapons may warrant an inference that the driver of the vehicle is in control of the weapons, but such knowledge does not require any such inference be drawn.").[12]

In light of these cases, the direct and circumstantial evidence in the case *sub judice* supports the rational inference that respondent had knowledge of the handgun in his vehicle.

## D.

The issue in this case is not whether the trial judge could have made other inferences from the evidence or even refused to draw any inference, but whether the inference he did make was supported by the evidence. We shall give due deference to the trial judge's determination and his rational inferences in reaching his decision. Nothing in the record detracts from the direct evidence of this case, *i.e.,* the gun was in respon-

---

**12.** Respondent refers to the cases of *Wilkes v. State,* 364 Md. 554, 774 A.2d 420 (2001) and *State v. Funkhouser,* 140 Md.App. 696, 782 A.2d 387 (2001), where the defendants were the drivers and sole occupants of the vehicles and how, in those instances, Maryland courts have found an inference sufficient to support probable cause to support the search of the driver because he or she was the *sole occupant* of the vehicle. Respondent's reliance on the "sole occupant" language of these cases is misplaced. The statements were completely accurate in the context of those cases. But, that language was not expressly explained and it set no limiting standard for the differing contexts of other cases. Other cases, as they are relevant to the instant case, do not require that the owner/driver be the sole occupant of the vehicle, rather such cases illustrate the special status of the owner/driver of a vehicle and the rational inference that can be made that they know of the contents of their vehicles.

Respondent did not have to be the only occupant of the vehicle for the trial judge to conclude as he did. As one of the dissenting opinions noted, the presence of others in the vehicle, in this case the two other passengers, does not affirmatively show that respondent did not have knowledge.

dent's vehicle's trunk. Respondent was admittedly transporting the vehicle, and thus the handgun. Nor does the record reflect any facts that would lead us to hold that the trial judge made any impermissible inferences regarding respondent's knowledge of the handgun being in the trunk of the vehicle.

First, and most important, respondent was the driver and lessee of the Buick; he and only he had an undisputed possessory interest in the vehicle. Respondent had rented the vehicle for an entire week [13] and was in possession and control of the vehicle, i.e., driving the vehicle, at the time of the traffic stop which led to the handgun being found in the trunk. There was no contrary direct evidence, other than the fact that a passenger later accepted the jacket, that anyone else had the right to access the trunk, or had accessed it. There was no direct evidence as to who had been wearing the jacket, or who put it in the trunk. There was no evidence that the jacket or the gun had been placed there without respondent's knowledge. There was no direct evidence that either passenger had concealed the placing of the handgun in the trunk from respondent. Respondent had access, for the entire week *and* the day and minute in question, to the whole of the vehicle, including the trunk. During that time, he, and only he as the lessee, had the right to grant and deny access to the

---

**13.** As the concurrence below noted, after the trial judge found respondent guilty, he asked respondent why had a rented vehicle from New York. Respondent replied:

"My rented car was from Maryland. I rented the car in Maryland, went to New York to go visit my family the weekend before. The car that I had, the brakes was bad. They switched it for me from the same rental company, but they said I had to bring the car back to New York."

This corroborates that respondent had complete control over the rental vehicle. Apparently, respondent had initially rented a different vehicle, which he had exchanged and then had to return the Buick in New York. This exchange between the trial judge and respondent also reflects that respondent then stated how on the night they were stopped, he saw his friends and asked them if they would take a ride with him up to New York and back, indicating that the passengers were just along for the ride and to keep respondent company. It was respondent who was responsible for the vehicle as the sole lessee and sought to return the vehicle to the rental agency in New York.

trunk of the car. From these facts alone, *i.e.*, from this direct evidence, the trial court judge properly inferred that "under the circumstances [respondent] as the driver and occupant of the car, knew of the gun's presence and, therefore, was transporting it."

Additionally, as articulated in one dissent at the Court of Special Appeals:

"[Respondent] knew the other occupants ... they had been in the car together for a significant period of time. The gun was not in a container.... All three occupants ... denied ownership of the jacket covering the gun .... it is likely that the seat was not down [based upon the trooper's testimony].... The gun was in the center of the trunk ....there is no indication that the passengers knew the trunk was accessible from behind the armrest. Even if they did, it was highly unlikely that a passenger could have placed the gun in the center of the trunk and placed a jacket over it, by working through the armrest opening, without [respondent's] knowledge." [Emphasis added.] [Alterations added.]

*Smith*, 145 Md.App. at 445–46, 805 A.2d at 1135. We agree that this other evidence, direct or circumstantial, supports the trial judge's inference in the case *sub judice*.

## V. Conclusion

After reviewing the record in respondent's case in a light most favorable to the State, we hold that the direct and circumstantial evidence upon which petitioner's case rested and upon which the trial judge reached his verdict was sufficient, as a matter of law, to support, beyond a reasonable doubt, that respondent knew the handgun was in the trunk of the Buick as he drove the car back to New York. A rational fact-finder may infer that, generally, an owner/driver of a vehicle has knowledge of the contents of that vehicle.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT**

OF THE CIRCUIT COURT FOR HARFORD COUNTY. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.

ELDRIDGE, RAKER, HARRELL, and BATTAGLIA, JJ., Concur.

BELL, C.J., Dissents.

HARRELL, J., concurring, in which BATTAGLIA, J., joins.

I concur in the Majority opinion and judgment of the Court. I write separately only to state that I would have extended its reasoning to embrace the views espoused by Judge James R. Eyler in his dissent in the Court of Special Appeals. *Smith v. State,* 145 Md.App. 400, 434–48, 805 A.2d 1108, 1128–36 (2002). In particular, the following passage from Judge Eyler's dissent resonates with me in its effort to place in proper perspective, in analyzing a sufficiency of the evidence question, the application of the abstruse[1] (to me) and often-chanted language from *Wilson v. State,* 319 Md. 530, 537, 573 A.2d 831, 834 (1990) ("a conviction upon circumstantial evidence alone is not to be sustained unless the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence") (internal citations omitted):

> In my view, based primarily upon *Jackson* [*v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)] and *Hebron* [*v. State,* 331 Md. 219, 627 A.2d 1029 (1993)], the *Jackson* constitutional standard is the applicable standard to determine sufficiency of the evidence, and the *Wilson* principle has no practical vitality. First, if there is any direct evidence, the *Wilson* principle does not apply. In that situation, sufficiency of evidence is rarely an issue; the question is one of credibility. Second, in the case of circumstantial evidence alone, the *Wilson* principle applies only when there is a single strand of evidence. Even in that instance,

1. "Abstruse—difficult to comprehend," *Merriam Webster's Collegiate Dictionary* 5 (10th ed.1993); "beyond the understanding of an average mind," *Roget's II, The New Thesaurus* 6 (1995).

however, the principle is not helpful. Caselaw dictates that direct and circumstantial evidence are to be treated the same. Further, all circumstances are to be considered together and not each piece separately. Finally, the State does not have to exclude all reasonable hypotheses of innocence to get to the trier of fact. Attempting to decide whether there is one strand or multiple strands of circumstantial evidence in a given case does not appear to be helpful. It is a question of the strength of the inferences to be drawn.

If the evidence is solely circumstantial, as *Hebron* indicates, the determination of sufficiency involves some weighing of inferences. In that situation, the strength and genuineness of inferences, in addition to credibility, have to be assessed in order to decide the ultimate issue. The court decides, in the first instance, as a generalization, whether the inference of guilt, drawn from the circumstantial evidence presented, would permit a fact-finder to be convinced beyond a reasonable doubt, and if so, the case is submitted to the fact-finder for that determination in the particular case before it. If the inferences are such that the fact-finder would have to speculate, the case should not go to the fact-finder.

If the inference of guilt is sufficiently strong, guilt is a fact question, even though the evidence would also support an inference of innocence. In other words, the meaningful test is whether the evidence supports a rational inference from which the trier of fact could fairly be convinced of guilt beyond a reasonable doubt. This test is the same whether the evidence is direct, circumstantial, or some combination of both.

Presumably because of the historical distinction between direct and circumstantial evidence, courts have been more prone to let any and all direct evidence pass the sufficiency test while attempting to formulate a rule for circumstantial evidence other than assessing the strength of the inferences presented. It may be that, at some point, the credibility of

direct evidence is so lacking that it cannot meet the sufficiency test.

*Id.* at 443–44, 805 A.2d at 1133–34.

Judge BATTAGLIA authorizes me to state that she joins in this concurrence.

RAKER, J., concurring, joined by ELDRIDGE, J.:

I join in the judgment of the Court affirming the conviction for unlawfully transporting a handgun. Based on the plain language of the statute, and the evidence presented, viewing the evidence in the light most favorable to the State, together with all reasonable inferences that may legitimately be drawn therefrom (including the statutory rebuttable presumption of knowledge), the evidence supports a finding beyond a reasonable doubt that the evidence was sufficient to support the conviction.

Respondent was convicted of unlawfully transporting a handgun, in violation of Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.) Art. 27 § 36B.[1] Section 36B(b) states in relevant part:

"Any person who shall wear, carry, or transport any handgun, whether concealed or open, upon or about his person, and any person who shall wear, carry or knowingly transport any handgun, whether concealed or open, in any vehicle traveling upon the public roads, highways, waterways, or airways or upon roads or parking lots generally used by the public in this State shall be guilty of a misdemeanor; *and it shall be a rebuttable presumption that the person is knowingly transporting the handgun ....*"

§ 36B (emphasis added). Upon reviewing the issues in this case, the only contested matter was whether respondent had knowledge of the handgun in the trunk of the automobile that

---

1. Unless otherwise indicated, all subsequent statutory references shall be to Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.) Art. 27 § 36B (current version at Maryland Code (2002) § 4–203 of the Criminal Law Article).

he had leased and that he was driving when the gun was found by the police.

The plain language of the statute creates a rebuttable presumption that a person who transports a handgun in a vehicle is "knowingly transporting" that handgun. *See* § 36B(b). Before the Circuit Court, at the motion for judgment of acquittal, the State argued that this presumption rendered the evidence presented sufficient to satisfy the element of knowledge. I agree.

In response to defendant's motion for judgment of acquittal, the State argued that the statute creates a rebuttable presumption that the person is knowingly transporting a handgun. Defense counsel argued that the statutory presumption was unconstitutional. Neither the Circuit Court nor the Court of Special Appeals included the presumption in their analysis. In a footnote to the plurality opinion, four members of the Court of Special Appeals gratuitously "held" that the statutory presumption was unconstitutional. *See Smith v. State*, 145 Md.App. 400, 407 n. 2, 805 A.2d 1108, 1112 n. 2 (2002).[2]

---

**2.** As authority, the plurality opinion of the Court of Special Appeals relied on *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). *Sandstrom* addressed the shifting of the burden of proof—not the burden of production. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 156–57, 99 S.Ct. 2213, 2224–25, 60 L.Ed.2d 777 (1979) (distinguishing "[t]he most common evidentiary device ... the entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant" from "far more troublesome" mandatory presumptions). The *Ulster County* Court noted that "[t]o the extent that a presumption imposes an extremely low burden of production—*e. g.,* being satisfied by 'any' evidence—it may well be that its impact is no greater than that of a permissive inference, and it may be proper to analyze it as such." *Id.* at 160, 99 S.Ct. at 2226, 60 L.Ed.2d 777. *See generally Mullaney v. Wilbur*, 421 U.S. 684, 703 n. 31, 95 S.Ct. 1881, 1891 n. 31, 44 L.Ed.2d 508 (1975).

The intermediate appellate court also erroneously drew support from language contained in the commentary to Maryland Pattern Jury Instruction 4:35.3 advising judges when instructing a jury to refrain from using the word "presumption" and instead to use the word "inference." The Pattern Jury Instruction comment should not be read as support for the view that the statutory presumption is unconstitutional, but

Although neither party challenged this statement in the certiorari petition, and the issue was never raised before this Court, I believe that it is a proper basis for this Court's analysis. The issue before this Court, and upon which certiorari was granted, was whether "the evidence was insufficient to sustain the conviction of the [respondent] for transporting a handgun." To determine the sufficiency of the evidence, this Court should examine the offense with which the respondent was charged in its entirety. Section 36B contains a rebuttable presumption of knowledge which cannot be ignored nor read out of the statute. Statutes are presumed to be valid and constitutional, and the burden is upon the one attacking it to establish clearly that it is unconstitutional. *See Lucky Stores, Inc. v. Board of Appeals,* 270 Md. 513, 526, 312 A.2d 758, 765 (1973); *Davis v. Helbig,* 27 Md. 452, (1867). Unless the issue of the constitutionality of the statute is raised properly, it is waived. See *State v. Burning Tree Club,* 301 Md. 9, 36, 481 A.2d 785, 799 (1984); *Hope v. Baltimore County,* 288 Md. 656, 661, 421 A.2d 576, 579 (1980); *Department of Natural Resources v. Linchester,* 274 Md. 211, 218, 334 A.2d 514, 520 (1975); *Beauchamp v. Somerset County,* 256 Md. 541, 547, 261

---

rather it should be considered in the context of jury instructions. The prevailing view is that a jury instruction should not use the word "presumption" because a jury is unlikely to understand the legal distinction between a rebuttable presumption and a mandatory presumption which shifts the burden of persuasion (the *presumption* of innocence is a different story). *See Francis v. Franklin,* 471 U.S. 307, 315–16, 105 S.Ct. 1965, 1971–72, 85 L.Ed.2d 344 (1985); Charles M. Cork, III, *Special Contribution: Annual Survey of Georgia Law June 1, 2001–May 31, 2002:* A Better Orientation for Jury Instructions, 54 Mercer L.Rev. 1, 49–52 (2002); Leslie J. Harris, *Criminal Law: Constitutional Limits on Criminal Presumptions as an Expression of Changing Concepts of Fundamental Fairness,* 77 J.Crim. L. & Criminology 308 (1986); *McCormick on Evidence* § 348, 476 (5th ed.1999); David E. Aaronson, *Maryland Criminal Jury Instructions and Commentary* app. V, at 887 (2nd ed.1988).

The Court of Special Appeals also cited an opinion of the Maryland Attorney General, 57 Op. Md. Att'y Gen. 288 (1972). The opinion, discussing the meaning of the term "transport" in § 36B(b), did not address the rebuttable presumption contained in the statute. While an opinion of the Attorney General may, at times, have persuasive effect, the cited opinion is irrelevant to the present discussion.

A.2d 461, 463 (1970). Moreover, it is a well-accepted rule of statutory construction that if a statute is susceptible of one construction that is constitutional and one that is unconstitutional, the statute should be construed as constitutional. *See State v. Taylor,* 371 Md. 617, 643–44, 810 A.2d 964, 979 (2002); *Farrell v. State,* 364 Md. 499, 506, 774 A.2d 387, 391 (2001); *Becker v. State,* 363 Md. 77, 92, 767 A.2d 816, 824 (2001); 2A Norman J. Singer, Sutherland Statutes and Statutory Construction § 45.11 (4th ed.1984). *Cf. Curran v. Price,* 334 Md. 149, 172, 638 A.2d 93, 104–105 (1994) ("If a statute is susceptible of two reasonable interpretations, one of which would involve a decision as to its constitutionality, the preferred construction is that which avoids the determination of constitutionality"). The constitutionality of the statute was not raised on appeal.

As the majority points out, respondent was the driver and lessee of the vehicle in which the handgun was found. He had possessed the vehicle for a fairly long period of time—approximately one week. As the lessee/driver of the car and the person with the keys to the trunk, he had the primary control and access to the trunk. These facts are sufficient to support a finding that respondent was transporting the handgun. None of the parties dispute this.

Under the statute, the State's evidence of transportation shifted the burden of production to respondent to rebut the presumption that he had knowledge of the gun. The ultimate burden of persuasion remains on the State to prove the element of knowledge. The presence of passengers in the car, the location of a jacket that may have belonged to a passenger, and the potential access to the trunk through the back seat may support an inference that the gun belonged to someone other than the driver. The evidence is not, however, sufficient, as a matter of law, to rebut the statutory presumption. As the majority reasons, the trier of fact may choose the inferences or evidence upon which it relies. Thus, in my opinion, the evidence that respondent had knowledge of the

gun was sufficient to sustain the conviction for transporting the weapon.

Judge ELDRIDGE has authorized me to state that he joins in this concurring opinion.

Dissenting Opinion by BELL, C.J.

For the reasons so eloquently and cogently stated by Judge Kenney, concurring in *Smith v. State,* 145 Md.App. 400, 427–34, 805 A.2d 1108, 1124–1128 (2002), I dissent.