JOHN ALEXANDER HEBB *v.* STATE OF MARYLAND

[No. 574, September Term, 1979.]

*Decided February 7, 1980.*

The cause was submitted on briefs to MOORE, WILNER and COUCH, JJ.

Submitted by *John W. Pfeifer, Assigned Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Stephen Rosenbaum, Assistant Attorney General,* and *Neal R. Myerberg, State's Attorney for St. Mary's County,* for appellee.

WILNER, J., delivered the opinion of the Court.

No one likes to be unjustly accused — certainly not 13-year old Elizabeth B. When her mother scolded her for something her older brother had done, Elizabeth got mad—mad enough to run away. She left on the rainy evening of December 27, 1978, by climbing out her bedroom window. As she trudged down the road later that evening, a man stopped and offered her a ride. She accepted. That was a mistake. The man raped her.

Appellant stands convicted of that rape; but he too feels unjustly accused. He has therefore appealed his convictions of second degree rape and assault that were entered up by a jury in the Circuit Court for St. Mary's County, raising the following three issues:

"1)  The Court erred in applying the *res gestae* rule to several out-of-court statements made by the victim.

 2)  There was not sufficient evidence to support verdict of guilty to charge of second degree rape.

 3) The Court erred in not granting a mistrial upon discovering that Jury had taken a book not in evidence into Jury room."

For reasons shortly to be explained, we agree with appellant's third contention. Reversible error was committed when the court permitted the jury's verdict to stand after learning that the jury had taken into the jury room, and had apparently considered in arriving at its verdict, a book that was not in evidence — a book entitled *Maryland Criminal Jury Instructions and Commentary.* The judgments will therefore be vacated.

In order to determine whether a retrial is permissible, we must also consider the issue of evidentiary sufficiency raised by appellant. *(Mitchell v. State,* 44 Md. App. 451 (1979))..But our resolution of the third issue does make it unnecessary to consider the hearsay question presented in appellant's first complaint.[1]

### (1) *The Forbidden Book*

No one seems to know for certain how the jury managed to obtain a copy of the jury instruction manual. It was evidently a mistake, there being some suggestion that one of the lawyers may have laid the book on a table near the various exhibits in the case, and it simply was handed to the jury along with the exhibits. No one knew that the jury had the book until after the verdict was rendered and the jury was discharged. Defense counsel then observed the foreman hand the book, along with the other exhibits, to the bailiff. Counsel immediately brought this to the court's attention and moved for a mistrial. This occurred at about 8:45 p.m.

The court reserved ruling on the motion until the next afternoon. It then announced:

"... Well, it was unfortunate that it was taken in there. The Court usually cautions attorneys to check over the evidence prior to the jury going in there or prior to the bailiff taking it to them. Of course, this was not done.

"For the record, I spoke with three of the jurors

---

1. Elizabeth returned home the next morning. Her mother had already called the police, who were at the home when she arrived. Officer Cox was permitted to testify that Elizabeth identified her assailant by the nickname "Applejack." Trooper Vail repeated the description of "Applejack" given to him by Elizabeth. Finally, Elizabeth's mother was permitted to state that, almost immediately upon Elizabeth's return, she told her mother she had been raped. These are the hearsay declarations challenged by appellant. The problem is that Elizabeth testified to all of this herself, without objection. See identified appellant by the nickname "Applejack," and admitted telling her mother that she had been raped. Given the record as a whole, we would be inclined to conclude that, in light of Elizabeth's direct testimony, any error was either waived or was harmless beyond a reasonable doubt. *See Peisner v. State,* 236 Md. 137 (1964), *cert. den.* 379 U.S. 1001 (1965).

that were on that panel yesterday this morning and would have done it in the presence of the State's Attorney and the defense attorney, however, it was necessary that the defense attorney be away, and that opportunity was not available. So, rather than holding them up, I did interview the three jurors, who stated, and all three were in agreement, that the only thing that that book was used for was to read the definition of assault and battery. Well, the Court gave them instruction on what assault and battery was and the instruction in the book maybe amplified that definition a bit. So, I will agree with the State that if it's error, it certainly was a harmless error, and I cannot see in any way how that could have influenced the jury verdict. So, for the reasons stated, the motion will be denied."

The State concedes, as indeed it should, that what occurred here was error. The Maryland Rules, in particular Rules 757 e and 758, specify what may be taken into the jury room; and the book in question here was not such an item.[2] Its very presence in the jury room was improper.

Conceding the error, the State nevertheless seeks to sustain the judgments by asserting that the error was nonprejudicial and therefore harmless. *See Wilhelm v. State,* 272 Md. 404, 429 (1974). The rationale offered in support of this argument is that (1) the court "ascertained" that the book was only used to determine the definition of assault and battery, and (2) even if the definition of that offense stated in the book was dissimilar to the instruction actually given, appellant was not prejudiced because the assault conviction was merged into the rape conviction. The error, in other words, has not really affected appellant's life, liberty, or

---

2. Rule 757 e provides that "with the approval of the court [the jury] may take into the jury room those instructions or parts of instructions which have been reduced to writing." Rule 758 permits, again with court approval, "all exhibits which have been admitted into evidence" and relevant parts of the charging document. The jurors may take with them any notes they made during the trial; and, upon specific request, the court may allow portions of the transcribed testimony or other evidence to be taken to the jury room. The book in question here fell into none of these categories; nor, of course, was there any court approval for the jury to take the book.

property because it played no role in his conviction for second degree rape.

The State's argument is not a persuasive one.

The point at issue came before the trial court, and comes to us, in a somewhat unusual posture in that the error, though easily preventable, was not discovered and could not reasonably have been discovered until after the jury had already completed its deliberations and arrived at its verdicts. Unlike the normal context in which a motion for mistrial is made and considered, there was no opportunity here for the court to correct or ameliorate the error and thus to judge its potential for prejudice prospectively in the light of possible corrective measures. This is a significant distinction — one that requires the most judicious exercise of the trial court's discretion and the most careful review by us of how that discretion was in fact exercised. If there was a reasonable and demonstrable potential for prejudice, that potential was not offset by any curative action, and thus stood undiminished before the jury in its consideration of appellant's guilt and his fate.

The major premise underlying the State's suggestion of harmless error is the trial court's "ascertainment" that the book was used only in connection with the definition of assault and battery. Although appellant has not seen fit to complain about the manner in which the court came to that conclusion, and we need not, therefore, consider whether that alone would justify a reversal, that process is nevertheless highly relevant in terms of whether the court properly exercised its discretion; and we may consider it in that context.

The court made its determination that the error was limited, and therefore nonprejudicial, solely upon its *ex parte* private conversation with three unidentified jurors. Two comments are in order. First, judges have no business questioning jurors in private about what they did or did not consider in reaching their verdict, and then using the information so secretly gained in deciding a motion for mistrial (or new trial). Although there is no evidence that the judge in this case acted

from any improper motive, it is obvious upon even the slightest reflection that such private conversations are so inherently pregnant with the potential for abuse and prejudice, for intimidation of jurors and corruption of the judicial process, that they are to be scrupulously avoided.

More directly in point here, however, is the fact that such a conversation with three of twelve jurors — with neither the three jurors identified nor the full content of the conversation recorded or revealed — is hardly a rational basis upon which to conclude that the error was limited to consideration of the assault count and was therefore harmless. The record does not indicate who the three jurors were, much less whether they were in a position to know if other jurors perused the book and if so what portions of it they read, or how they used the information gained. If, as the court itself said, this was the basis for the court's conclusion, the record before us fails to indicate adequate evidence in support of it.

Notwithstanding the flawed process used by the court, however, and the consequential doubt as to its expressed findings, prejudice is not simply to be presumed. Indeed, the Court of Appeals has held more than once that "[t]he decision by the trial court in the exercise of its discretion denying a mistrial will not be reversed on appeal *unless it is clear that there has been prejudice to the defendant.*" (Emphasis supplied.) *Wilhelm v. State, supra,* 272 Md. at 429. To assist in properly determining whether there has been such prejudice, we must look to the nature of the error, in this case the forbidden book.

The *Maryland Criminal Jury Instructions and Commentary* represents an attempt to devise standard jury instructions covering virtually every aspect of a criminal case. It contains suggested instructions, each accompanied by a discussion of relevant cases and legal commentary, with respect to each of the major substantive offenses, including the various sex offenses, and to various other procedural or penumbral matters such as mistaken identity (§ 5.10), intent (§§ 3.01-3.06), credibility (§ 2.06), child witness (§ 2.04), and even the "Allen" charge (§ 1.13). As Judge Digges, of our Court of Appeals, observed in a Foreword to the book, it is

a worthwhile publication intended to serve the lawyer as a tool in preparing suggested instructions. But, at the same time, it is a treasurehouse of confusion and misinformation if given to a jury for its perusal without any constraint.

The fact is that the instructions actually given to the jury as to both assault and rape, though not necessarily erroneous, did differ significantly from those contained in the manual.[3] If the jury had read all or any part of § 4.31 (Carnal knowledge) or § 4.32 (Rape), as they appear in the bound edition, it would have been hopelessly confused as to what was really before it. The book itself, under the circumstances of this case, establishes not only the potential for prejudice but, if any member of the jury read virtually any part of it, the likelihood of such prejudice. Whenever the jury considers material not in evidence, or "instructions" never given by the court or argued by counsel, prejudice looms—especially so when the material is either irrelevent or inconsistent with the instructions actually given by the court.

Had it been properly established that the book was never in fact consulted by any juror for any purpose — that it lay untouched and unread — the court may reasonably have found a lack of prejudice. But, from what the three jurors apparently said, the book *was* consulted, at least with respect to assault and battery. We can accept their unrecorded word for that much, but for no more in light of this record. We are

---

3. The court's only instruction as to assault was as follows: "And assault and battery is an offer to do bodily harm and when it's in your power to do the bodily harm. The battery is the consummation of that assault. In other words, if I in a menacing manner with intention to hurt you, if I swing on you and you are close enough that I may hit you, that is the assault. If I come all around and clip you on the chin and hit you, then that is the battery. . . ." By way of comparison, the instructions and commentary in the manual take up four pages. *See* §§ 4.11, 4.12. The differences are even greater with respect to the rape charge. The book in question was published in 1975, and does not, in its bound edition, take account of the significant changes made in the sex offense laws in 1976 and 1977. Indeed, second degree rape — the crime charged to appellant — is not mentioned or included in the suggested standard instructions. The closest relevant "crime" discussed in the book is carnal knowledge of a female under 14, formerly proscribed by art. 27, § 462. That section, and the crime as stated therein, was repealed, however, in 1977. The offense, with certain modifications, now constitutes second degree rape under current § 463. The record before us does not indicate whether the jury had only the bound edition of the book or also a pocket supplement noting the recent changes in the law.

left, therefore, with the real possibility that other jurors may have looked beyond the sections on assault and battery, and with the knowledge that if they did, confusion and prejudice was not only possible, but likely. The problem, therefore, is not limited merely to the assault charge, and is not resolved by a merger of the two convictions. It is clear to us that the error was not harmless beyond a reasonable doubt, and that the trial court therefore committed clear error and abused its discretion in denying the motion for mistrial.

## (2) *Evidentiary Sufficiency*

Appellant is not so lucky with respect to his second contention. We find that the evidence was more than sufficient to sustain his conviction for second degree rape — a reasonable jury could rationally have found his guilt beyond a reasonable doubt.

Md. Ann. Code art. 27, § 463 (a) (3) defines as second degree rape "vaginal intercourse with another person ... who is under 14 years of age and the person performing the act is at least four years older than the victim."

Elizabeth, who, as noted, was 13 at the time, identified appellant as the man who picked her up. She said that he pulled off to the side of the road, took off her clothes, started pulling off his clothes, and got on top of her. He held her hands behind her back. She was frightened and began crying. She had never had intercourse before, and she felt pain. When appellant finished, she washed herself off with a rag.

Dr. Jorge Del Aguila, a gynecologist, examined Elizabeth at the hospital the next day — December 28. He testified that she had a lacerated hymen, accompanied by bleeding and swelling, all of which indicated to him that "there was probably some kind of mechanical trauma which had been happening probably very recently." When Elizabeth returned home the next day, she told her mother and a police offficer that she had been raped. There was evidence that appellant was 25 years old at the time of the occurrence, making him, of course, more than four years older than Elizabeth.

This was enough to justify the conviction, and thus to permit a retrial.

> *Judgments reversed; case remanded to Circuit Court for St. Mary's County for retrial; costs shall not be reallocated as part of the judgments of this Court pursuant to Maryland Rule 1082 f.*