4 A.3d 17

Kenneth JEFFERSON

v.

STATE of Maryland.

No. 1013, Sept. Term, 2008.

Court of Special Appeals of Maryland.

Sept. 2, 2010.

Martha Weisheit (Elizabeth L. Julian, Acting Public Defender, on the brief) Baltimore, MD, for appellant.

James E. Williams (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: HOLLANDER, WOODWARD and ZARNOCH, JJ.

WOODWARD, J.

Appellant, Kenneth Jefferson, was convicted on April 22, 2008, by a jury sitting in the Circuit Court for Baltimore City of wearing, carrying and transporting a handgun on or about his person and carrying a concealed and dangerous weapon on or about his person. On June 6, 2008, appellant was sentenced to two years incarceration for carrying a handgun, and a concurrent sentence of two years for carrying a concealed dangerous weapon. Appellant timely appealed and presents the following questions for our review:

1. Was it plain error material to the rights of the accused for the trial judge to conduct the voir dire by posing all the questions at once and then calling individual jurors to the bench to discuss their responses?

2. Was it error to respond to a jury question about the elements of the crime of wearing, carrying or transporting a

handgun on one's person by sending to the jury a copy of the applicable statute?

3. Was the evidence insufficient to sustain the Appellant's conviction for carrying a handgun on his person?

For the following reasons, we shall affirm.

## BACKGROUND

Officer David Simmons, of the Baltimore City Police Department, and accepted as an expert in the use of radar, testified that on June 23, 2007, at around 2:50 p.m., he was on patrol in a marked police vehicle near the 3200 block of Reisterstown Road. Officer Simmons noticed a Ford Explorer traveling northbound at a speed of 50 miles per hour, which was in excess of the posted speed limit of 30 miles per hour. Officer Simmons watched the vehicle pass his location, and then turn right near the 2500 block of Druid Hill Park Drive. Officer Simmons then proceeded to follow the Explorer and testified that he "had to travel at a pretty high rate of speed to catch up with the vehicle." After activating his emergency lights and siren, Officer Simmons then stopped the Explorer.

Officer Simmons approached the Explorer and spoke to the vehicle's driver, appellant in this case. Sitting in the front passenger seat was appellant's co-defendant at trial, Berry Green. After advising appellant of the reason for the stop, appellant informed Officer Simmons that his driver's license was suspended. Officer Simmons confirmed this information over his police radio, and learned that appellant's license had been suspended for a failure to appear in traffic court.

Officer Simmons directed appellant to exit the vehicle and then brought him to the back of his patrol vehicle. From that location, Officer Simmons also was able to see that Green, the passenger in the Explorer, was "bending over in the passenger side of the vehicle as if he was stuffing something underneath the seat." Officer Simmons further testified that, based on his training and experience, which included looking for "certain signs that maybe there may be a weapon, there may be some drugs in the car, or maybe because you might be

attempting to try to hide something," it appeared to Officer Simmons that Green was attempting to conceal something. While Officer Simmons made these observations, he asked appellant if there were any drugs or weapons in the Explorer, and appellant replied that there were none.

At this point, Officer Simmons radioed for backup. Once those units arrived, Officer Simmons advised appellant that he was being arrested for driving on a suspended license. Officer Simmons again asked appellant if there were any drugs or guns in the Explorer, and appellant replied that there was a "fishing knife underneath the driver side seat."

Officer Simmons went to the driver's side seat and found "what was, appeared to be a battle knife to me. The knife had what's pretty much like a brass knuckle holding for you to hold on it, and it had spikes coming form [sic] the portion where the fist is wrapped around it, and it also had a long blade which was definitely not used for fishing." The knife was admitted into evidence at trial.

Officer Simmons then had Green step out of the vehicle and the police continued to search for more weapons. Officer Ronald Zimmora, who had responded to the scene, informed Officer Simmons that he found a loaded gun underneath the passenger side seat. Officer Simmons asked Officer Zimmora to stay with appellant while he searched the vehicle. After searching the vehicle underneath the passenger side seat, Officer Simmons located a loaded .38 caliber revolver. The butt of that handgun was facing outward towards the passenger seat. The revolver was admitted into evidence at trial.

Officer Simmons demonstrated for the jury where the two weapons were found inside the vehicle. He testified that the "[k]nife was under the driver's side seat, and actually the gun was underneath the passenger side seat." Further, Officer Simmons agreed with the prosecutor's question that a person located either in the driver's seat or the passenger's seat could "reach either of the weapons as they were recovered on June 23rd, 2007." Both appellant and Green denied knowledge of

the gun. The parties stipulated that the revolver was operable and met the definition of a handgun.

Appellant testified on his own behalf and admitted that he was speeding when Officer Simmons performed the traffic stop. Appellant indicated that he did not know his co-defendant, Green, and was just giving Green a ride in exchange for money. Appellant admitted that his license was suspended, but claimed it was for a fine that he had not yet paid. He also informed Officer Simmons that he had a knife near his seat in the vehicle, which he maintained was a fishing knife he used to catch catfish. Appellant also indicated that he had this knife in the vehicle because he had been carjacked at gunpoint on some prior occasion.

Appellant testified that he did not know that the revolver was inside his vehicle. He claimed that Green put the gun there. Appellant also testified that he spoke to Green about the gun, and at some point, apparently while they were in the vehicle, Green told him, "I'm dirty. Let me get out." Appellant further testified that "[h]e had enough time to throw the gun out." Appellant maintained that he was not trying to evade Officer Simmons, and also testified, over objection, that he told Green that Green should have told him he had a gun.

On cross-examination by the State, appellant admitted that he had a prior theft conviction. On cross-examination by his co-defendant, Green, appellant admitted that the knife was both for fishing and for his protection. Appellant also testified that the knife was located on the side of his seat, and not underneath the seat. In rebuttal, Officer Simmons testified that he did not see a knife in plain view, and that he recovered the knife from underneath appellant's seat.

We shall include additional facts in our discussion as necessary.

## DISCUSSION

### I.

■ Appellant first contends that the trial court erred in the manner it conducted voir dire of the prospective jurors

under *Wright v. State*, 411 Md. 503, 983 A.2d 519 (2009),[1] and asks this Court to recognize plain error on this issue. The State responds by conceding that the voir dire in this case was error under *Wright*, but that, absent an objection by appellant's counsel, that error does not amount to plain error requiring reversal. For the following reasons, we agree with the State and decline to exercise plain error review of appellant's first question.

Prior to jury selection, the parties discussed the proposed voir dire, and appellant's counsel indicated he did not object to the State's voir dire. The trial court then informed the parties the manner it intended to conduct voir dire as follows:

All right. Since nobody has any objection of each others [sic] questions, what I will do is, I will merge them all into a single paragraph and ask all the questions at one time. At the end of the voir dire we'll bring each juror up to the bench and we'll ask them if they have any response to the questions. We'll take their responses and then each of you can take limited follow-up questions.

And then we'll finish and we'll move to the next juror. At the end of the 50th juror, we'll then do challenge for cause. [Prosecutor], you'll go first. Indicate the summons number of the person you wish to challenge and pause. Each of you indicate if you agree or disagree. If anybody disagrees, I'll give you argument to the moving party and the disagreed party, then I'll rule.

If everybody agrees, I'll grant the challenge without hearing any argument. Once we're done, [Prosecutor], we'll do [Defense Counsel for Green] the same way. Summons number, pause, agree or disagree, if disagree, moving party, opposing party, and then we'll do [Defense Counsel for Appellant] the same way. Once we've eliminated those people who were challenged for cause, we'll select a jury by alternative challenge.

---

1. The trial court clearly was unaware of *Wright v. State,* 411 Md. 503, 983 A.2d 519 (2009), because *Wright* was decided after the trial in the case *sub judice.*

Appellant did not object to the trial court's manner of conducting voir dire examination. Thereafter, the prospective jurors entered the courtroom, and the judge informed them as follows:

I'm going to ask you a series of questions now designed to determine whether you would be unfair to any of the three parties involved in the case, or otherwise unable to reach a unanimous verdict. I'm going to ask all the questions in one paragraph. And then we'll have all 50 of you come to the bench and respond.

Counsel can ask follow-up questions and then from those questions and answers certain challenges will be made to get the panel down from 50 to 12. If you're not sure that information you possess is an answer, please volunteer that information. It's better for us to know too much than to know too little.

Because if we try the case and you go into the Jury Room for you to deliberate, and you say "I can't do this" because of this or that, or any other reason, then we've wasted the entire afternoon. If you say it to the lawyers at the bench now, it might generate a challenge and in that way we might be able to get a jury that's capable of reaching a unanimous verdict one way or the other.

So with that in mind, let me start the questions.

The trial court then proceeded to ask all of the parties' agreed-upon voir dire questions collectively. After the court asked these questions as a group, counsel approached the bench and both defense counsel for appellant and for Green agreed that the court did not "miss any important questions."

Following this, the trial court called each prospective juror to the bench and asked whether that person had a response to the questions, whether that person had ever been in a courtroom before, and whether there was any other reason the person would be unfair to anyone involved in the case. In addition, appellant's counsel was permitted to ask questions of the prospective jurors at this time. The court then heard challenges and struck ten prospective jurors for cause.

After jury selection, appellant's counsel indicated that the panel and the alternate were acceptable. After the luncheon recess, and prior to opening statements, the court also excused one of the jurors and substituted the alternate in that juror's place. Appellant's counsel offered no objection to the substitution.

Subsequent to the trial in this case, the Court of Appeals disapproved of a voir dire procedure that asked the venire questions collectively. In *Wright,* as in this case, the venire was asked, "as a group, a roster of seventeen questions." 411 Md. at 506, 983 A.2d 519. After the collective questioning, each venireperson was called to the bench and asked "if he or she had any information in response to the voir dire questions" and "if he or she could be fair and impartial." *Id.* Defense counsel objected, arguing that lumping all seventeen voir dire questions together frustrated the ability of the jurors to remember all of the questions. *Id.* at 507, 983 A.2d 519.

The Court of Appeals agreed, explaining: "The presentation of a lengthy roster of questions to the venire, without providing the opportunity to answer each question as it was posed, required each venireperson to comprehend and retain far too much information to guarantee that the questions were answered properly." *Id.* at 509, 983 A.2d 519. The Court noted that voir dire was "five and a half minutes of continuous questioning, without pause," which "resulted in substantial delay between presentation of the questions and the answers." *Id.* at 512, 983 A.2d 519. Accordingly, the Court held that "the selected voir dire method may have obscured relevant information from the trial court's view by failing to ensure that the jurors on the venire made reasonably full disclosures. The trial court was therefore working with an incomplete understanding of the jury pool." *Id.* at 513, 983 A.2d 519; *see also Height v. State,* 190 Md.App. 322, 326, 330–31, 988 A.2d 1054 (2010) (concluding that, in a case where defendant objected to the method of conducting voir dire at the start of the process, jury selection procedure was "virtually identical" to that used in *Wright* and was unconstitutional).[2]

---

2. The Court of Appeals in *Wright* also stated that "[w]e are not suggesting that asking questions to a venire panel en masse is an inherently

Unlike in this case, in both *Wright* and *Height,* defense counsel objected to the manner in which the trial court conducted voir dire. *See Wright,* 411 Md. at 506–07, 983 A.2d 519; *Height,* 190 Md.App. at 326, 988 A.2d 1054. Here, appellant's counsel did not object to the manner of conducting voir dire, either before or after the voir dire was completed. Further, after jury selection, appellant's counsel agreed that the jury and alternate were acceptable. Accordingly, the issue is unpreserved for appellate review. *See* Md. Rule 8–131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court . . . ."); *accord Robinson v. State,* 404 Md. 208, 216, 946 A.2d 456 (2008).

Apparently recognizing the procedural default, appellant asks this Court to consider the issue as plain error. After the briefs were filed in this case, this Court decided *James v. State,* 191 Md.App. 233, 991 A.2d 122 (2010). One of the issues presented in that appeal concerned whether a voir dire procedure that violated the Court of Appeals's opinion in *Wright* constituted plain error. *James,* 191 Md.App. at 245–46, 991 A.2d 122. We concluded that it did not. *Id.* at 246, 991 A.2d 122.

As is well-established, our discretion to recognize plain error is plenary. *See McMillan v. State,* 181 Md.App. 298, 359, 956 A.2d 716 ("[W]hen a defendant fails to object, an appellate court possesses 'plenary discretion to notice plain error material to the rights of a defendant, even if the matter was not raised in the trial court.' ") (Citation omitted), *cert. granted,* 406 Md. 744, 962 A.2d 370 (2008). Further, an appellate court "will review the unpreserved claim only where the unobjected to error can be characterized as 'compelling,

flawed procedure." *Wright,* 411 Md. at 514, 983 A.2d 519. The Court then suggested two alternative procedures for conducting voir dire, including: (1) addressing a question to the venire as a whole, then taking notes of each juror who responded affirmatively to each question; or, (2) distributing a written list of questions to the venire prior to voir dire. *Id.*

extraordinary, exceptional, or fundamental to assure the defendant a fair trial' by applying the plain error standard." *Abeokuto v. State,* 391 Md. 289, 327, 893 A.2d 1018 (2006) (citation omitted).

In *James,* we declined to apply plain error to a voir dire procedure that was error under *Wright.* There, we stated:

> We decline to exercise our discretion in this case to notice plain error in the trial court's voir dire. Although an appellate court may address an unpreserved issue to "communicate a desired message to the bench and bar that might otherwise go unsent," *McMillan,* 181 Md.App. at 360 [956 A.2d 716], the Court of Appeals has already spoken clearly in *Wright,* obviating the need for further appellate exploration of this issue. Furthermore, the "error" of which appellant complains was not "plain" at the time of trial in this case. *Cf. Height,* 185 Md.App. at 332–33 [970 A.2d 921] ("it has been held consistently that there is nothing improper about a trial judge's questioning prospective jurors as a group."). An error would not be "plain" unless it is wrong under current law. *See United States v. Olano,* 507 U.S. 725, 734 [113 S.Ct. 1770, 123 L.Ed.2d 508] (1993). At the time of the trial in the case before us, Maryland's appellate courts had yet to address whether the manner in which the voir dire was conducted was error. No extraordinary circumstances are present in the case before us to invoke our discretion to address an unpreserved claim of error that has since been addressed by the Court of Appeals.

*James,* 191 Md.App. at 247, 991 A.2d 122.

Similarly, we conclude that appellant's claim is not so compelling or extraordinary that it requires review absent an objection at trial. Accordingly, we decline to exercise our discretion to recognize plain error on this issue.

## II.

Appellant next asserts that the trial court erred in responding to a jury note asking for a copy of the statute applicable to Count One, wearing, carrying or transporting a handgun on

one's person, by supplying the jury with a copy of said statute. The State responds that the trial court properly exercised discretion in providing a copy of the statute to the jury. We conclude that the trial court properly exercised its discretion in this case, and, alternatively, any error was harmless beyond a reasonable doubt.

Here, the record indicates that the jury sent the court a number of notes after deliberations began. We observe that, among the first questions the jury asked, was a "request to review transcript." The trial court informed the jury that there was no transcript, but they could hear a tape recording of any testimony they wished to hear. The next day, the jury then returned the note at issue here. That note provided as follows:

1. Wear, carry, and transport a handgun. "3 items." Not wear, carry, or transport

Clarify please, we are having difficulty with the terminology. Does it have to be all 3? Can a passenger transport?

2. Officer Simmons' initial testimony.

3. Possess—Define please.

4. Send in statues [sic] (written) that you read for:

Count 1 Jefferson

" 1 Green

" 2 Green

There is an error on Kenneth Jeffersons "# 5 is # 4" document.

The trial court asked for suggestions from the parties, and appellant's counsel first replied that "it is my understanding that it does not need to be all three" and that "a passenger can transport a handgun." After Green's counsel disagreed and suggested the jury had to find all three, *i.e.*, wear, carry, and transport, under the indictment, Green's counsel and the court mentioned the request for copies of the statutes as follows:

[DEFENSE COUNSEL FOR GREEN]: What's interesting to me is this Question Number 4, asking for the

statute. In this particular case, the jury is not a jury on the law, and has to receive your instructions and follow them.

THE COURT: I think they're curious as to the inter-relationship between the "or" and the "and." And that's why they want to see the statute.[3]

After hearing from the State as to the other questions in the note, the trial court returned to the issue of providing copies of the statute:

THE COURT: I'm going to tell them that the Statute says "or", however, the State has held itself to the burden of proving "and" because of the way they worded the indict-ment. And then I'll define each of the three words under the normal English meaning. And there's no case law defining "wear, carry, and transport," with one exception. There's one annotation that I'll read as soon as I find it.

[DEFENSE COUNSEL FOR GREEN]: And, Your Honor, as far as a passenger transporting, I agree with the State on that proposition, too, if you had the word "know-ingly" transport.

THE COURT: Yeah, but they're not looking for the definition of "knowingly transport". That's Count 3. They didn't ask for Count 3. They only asked for the statute for Count 1 and, 1, 2. Count 1 for one man is Count 2 for the other man.

The court then indicated it would provide copies of Section 5–133(b) of the Public Safety Article, with respect to the jury's request concerning a count charged solely against appellant's co-defendant Green, and Section 4–203 of the Criminal Law Article, which concerned both appellant and Green. *See* Md. Code (2002, 2009 Supp.), § 4–203 of the Criminal Law Article ("C.L."); Md.Code (2003), § 5–133(b) of the Public Safety

---

**3.** Count One of the indictment charges that co-defendants Green and appellant "unlawfully did WEAR, CARRY and TRANSPORT a HAND-GUN, to wit: .38 caliber Smith and Wesson Revolver upon and about his person, in violation of Criminal Law Article, Section 4–203 of the Annotated Code of Maryland; against the peace, government and dignity of the State."

Article. ("P.S."). Green's counsel again objected on the grounds that the statute used the word *or*, in describing the crime of wear, carry, or transport, and the indictment charged him with wear, carry *and* transport, and the court responded:

THE COURT: Well, they asked for copies of the statutes. I'm going to tell them verbally what I'm going to tell them. But I'm also going to tell them that by wording the indictment the way that they have on their verdict sheet, the State has held themself to—

[DEFENSE COUNSEL FOR GREEN]: I understand.

THE COURT:—to a verb.

[DEFENSE COUNSEL FOR GREEN]: Well, I remove my objection. That makes sense.

After the court further informed the parties about its intent to instruct the jury with a portion of C.L. § 4–203, as well as a portion of an opinion from the Attorney General, counsel for Green clarified and renewed his earlier objection:

[DEFENSE COUNSEL FOR GREEN]: If you decide to send statutes back, I certainly agree you picked the correct statutes. They're correct, portions of the statutes.

THE COURT: Right.

[DEFENSE COUNSEL FOR GREEN]: But I would object to statutes being sent back, not because you haven't picked the right ones and the right portions, just on the concept that they should not be given the statutes. They should be given the law from you.

Then, after the court read Maryland Rule 4–326 into the record, and after recognizing that this Court held in *Hebb v. State*, 44 Md.App. 678, 410 A.2d 622 (1980), that it was error for the trial court in that case to send the *Maryland Criminal Jury Instructions and Commentary* into the jury room, the trial court ruled:

THE COURT: . . . I think, however, if you give them the applicable, a copy of the applicable portion of the statute, all you're doing is reducing instruction to writing, or a portion of instruction to writing. And I don't see any prejudice. So

I'm going to honor their question, so that they digest what I tell them verbally in a way that's most user friendly to them.

[DEFENSE COUNSEL FOR GREEN]: I understand, Your Honor. And I understand the basis of your decision. I would just like to note my objection.

THE COURT: Okay. It's noted.

[DEFENSE COUNSEL FOR APPELLANT]: For the record, Your Honor, I would also object—

THE COURT: Okay.

[DEFENSE COUNSEL FOR APPELLANT]:—as well.

After, the jury returned to the courtroom, the court distributed a copy of the pertinent statutes, stating: "We haven't given you the entire Statute, but we've given you the applicable part of the Statute minus extraneous matter that is not relevant to this particular case." [4] The court then responded to the jury's note, in pertinent part, as follows:

First of all, the instruction is Defendant is charged with a crime of carrying a handgun. In order to convict the Defendant, the State must prove the Defendant wore, carried, or transported a handgun on or about his person. And

---

**4.** A copy of the statute is included with the record on appeal as Court's Exhibit 1. Pertinent to Count One of the indictment charging appellant with wearing, carrying and transporting a handgun, the exhibit cites C.L. § 4–203, as follows:

§ 4–203. Wearing, carrying, or transporting handgun-Prohibited
(a)(1) Except as provided in subsection (b) of this section, a person may not:
(i) wear, carry, or transport a handgun, whether concealed or open, on or about the person;
(ii) wear, carry, or knowingly transport a handgun, whether concealed or open, in a vehicle traveling on a road or parking lot generally used by the public, highway, waterway, or airway of the State;
(iii) violate item (i) or (ii) of this paragraph while on public school property in the State; or
(iv) violate item (i) or (ii) of this paragraph with the deliberate purpose of injuring or killing another person.
(2) There is a rebuttable presumption that a person who transports a handgun under paragraph (1)(ii) of this subsection transports the handgun knowingly.

then it defines handgun, which I won't go through again. Handgun on or about a person, if it's within his reach and available for that person's immediate use.

Now, in this particular indictment, the State has assumed a greater burden than the Statute requires because it's charged the Defendants with wearing, carrying, and transporting a handgun. So the State has to prove beyond a reasonable doubt the Defendants wore, carried, transported a handgun.

The court then: provided definitions of "wear," "carry" and "transport;" cited an Attorney General's opinion concerning whether the crime applied to passengers in a vehicle; discussed the "knowingly" element of transporting a handgun in a vehicle; and, defined "possession." The jury then was informed that Officer Simmons' testimony would be replayed after the jury returned from lunch.

On appeal, appellant begins his analysis by citing portions of Maryland Rule 4–325, which provides, in pertinent part, that "[t]he court shall give instructions to the jury at the conclusion of all the evidence and before closing arguments and may supplement them at a later time when appropriate." Md. Rule 4–325(a). Further, Maryland Rule 4–325(c) provides:

(c) How given. The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

Generally, whether to give the jury a supplemental instruction is a matter within the sound discretion of the trial judge. *See Lovell v. State,* 347 Md. 623, 657, 702 A.2d 261 (1997); *see also Cruz v. State,* 407 Md. 202, 210, 963 A.2d 1184 (2009) ("Trial courts have discretion in deciding whether to give a jury supplemental instructions in a criminal cause."). A trial court's decision to give a supplemental instruction ordinarily "will not be disturbed on appeal, absent a clear abuse of

discretion." *Roary v. State,* 385 Md. 217, 237, 867 A.2d 1095 (2005). However, "when a jury asks a question that reflects confusion on an issue, the trial judge 'must respond' to the question 'in a way that clarifies the confusion' if 'the question involves an issue central to the case.'" *Lee v. State,* 186 Md.App. 631, 665, 975 A.2d 240 (quoting *State v. Baby,* 404 Md. 220, 263, 946 A.2d 463 (2008), and citing *Lovell,* 347 Md. at 658–59, 702 A.2d 261), *cert. granted,* 411 Md. 355, 983 A.2d 431 (2009).

In addition, we have explained that, although a court's response must not be "ambiguous, misleading, or confusing to the jurors," *see Oliver v. State,* 53 Md.App. 490, 505, 454 A.2d 856 (1983) (citing *Battle v. State,* 287 Md. 675, 685, 414 A.2d 1266 (1980)), the appropriate response to a jury question is dependent upon many factors:

> "Clearly, the person in the best position to weigh these 'facts and circumstances' is the trial judge. From his vantage point he has the opportunity to surmise which of the phrases in his instructions have been absorbed and which should be embellished or repeated."

*Oliver,* 53 Md.App. at 505, 454 A.2d 856 (quoting *Kelly v. State,* 270 Md. 139, 143, 310 A.2d 538 (1973)).

Here, appellant recognizes that the trial court had a responsibility to respond to the juror's note and was required to "provide a supplemental instruction directed at eliminating the juror's confusion." However, appellant contends in this Court that the trial court erred under Maryland Rule 4–326(b) and (c), because those rules do not provide for submission of a copy of a statute to the jury room during deliberations.

The Court of Appeals has stated:

> With respect to the interpretation of the Maryland Rules, this Court has stated that, "[t]he canons and principles which we follow in construing statutes apply equally to an interpretation of our rules." In order to effectuate the purpose and objectives of the rule, we look to its plain text. To prevent illogical or nonsensical interpretations of a rule, we analyze the rule in its entirety, rather than independent-

ly construing its sub-parts. If the words of the rule are plain and unambiguous, our inquiry ordinarily ceases and we need not venture outside the text of the rule.

The venerable plain meaning principle, central to our analysis, does not, however, mandate exclusion of other persuasive sources that lie outside the text of the rule. We have often noted that looking to relevant case law and appropriate secondary authority enables us to place the rule in question in the proper context.

*Johnson v. State,* 360 Md. 250, 264–65, 757 A.2d 796 (2000) (citations omitted); *see also King v. State,* 407 Md. 682, 698, 967 A.2d 790 (2009) ("When interpreting the Maryland Rules, we look to the ordinary rules of statutory construction.") (Citing *Hurst v. State,* 400 Md. 397, 417, 929 A.2d 157 (2007)).

Maryland Rule 4–326(b) provides:

(b) Items taken to jury room. Sworn jurors may take their notes with them when they retire for deliberation. Unless the court for good cause orders otherwise, the jury may also take the charging document and exhibits that have been admitted in evidence, except that a deposition may not be taken into the jury room without the agreement of all parties and the consent of the court. Electronically recorded instructions or oral instructions reduced to writing may be taken into the jury room only with the permission of the court. On request of a party or on the court's own initiative, the charging documents shall reflect only those charges on which the jury is to deliberate. The court may impose safeguards for the preservation of the exhibits and the safety of the jury.

Additionally, Maryland Rule 4–326(c) provides:

(c) Jury request to review evidence. The court, after notice to the parties, may make available to the jury testimony or other evidence requested by it. In order that undue prominence not be given to the evidence requested, the court may also make available additional evidence relating to the same factual issue.

Looking to the plain text of these rules, there is no provision approving or forbidding the submission of a written copy of a statute to the jury. Furthermore, we have found no case law in Maryland addressing the question presented.[5]

Appellant directs our attention to *Hebb,* a case cited by the trial court in its discussion of this issue. In *Hebb,* after the jury had deliberated and returned guilty verdicts on charges of second degree rape and assault, it was learned that a copy of the *Maryland Criminal Jury Instructions and Commentary* was taken into the jury room during deliberations. *Hebb,* 44 Md.App. at 679, 410 A.2d 622. After this discovery, the trial court denied Hebb's motion for a mistrial. *Id.* at 680–81, 410 A.2d 622. On appeal, the State conceded having the instructions book in the jury room was error, but that it amounted to harmless error beyond a reasonable doubt. *Id.* at 681, 410 A.2d 622. This Court disagreed, stating:

> The *Maryland Criminal Jury Instructions and Commentary* represents an attempt to devise standard jury instructions covering virtually every aspect of a criminal case. It contains suggested instructions, each accompanied by a discussion of relevant cases and legal commentary, with respect to each of the major substantive offenses, including the various sex offenses, and to various other procedural or penumbral matters such as mistaken identity (§ 5.10), intent (§§ 3.01–3.06), credibility (§ 2.06), child witness (§ 2.04), and even the "Allen" charge (§ 1.13). As Judge Digges, of our Court of Appeals, observed in a

---

**5.** There are a few cases outside of Maryland that address the issue presented in this case. *See Getty Petroleum Mktg., Inc. v. Capital Terminal Co.,* 391 F.3d 312, 332 n. 26 (1st Cir.R.I.2004) (Lipez, J., concurring) (stating that "the judge has broad discretion to give the jurors copies of statutes for their deliberations, or decline to do so, as she sees fit"); *United States v. Polizzi,* 500 F.2d 856, 875–76 (9th Cir.1974) (concluding there was no abuse of discretion when court sent statutes and regulations into jury room in a complex case), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 803, 42 L.Ed.2d 820 (1975). *But see People v. Sanders,* 70 N.Y.2d 837, 523 N.Y.S.2d 444, 517 N.E.2d 1330, 1330–31 (1987) (reversing where trial court gave the jury the text of a statute without consent of defense counsel as required under state criminal procedure law).

Foreword to the book, it is a worthwhile publication intended to serve the lawyer as a tool in preparing suggested instructions. But, at the same time, it is a treasurehouse of confusion and misinformation if given to a jury for its perusal without any constraint.

*Id.* at 683–84, 410 A.2d 622.

*Hebb* is clearly distinguishable from this case. The court's exhibit here was a written copy of law with respect to Count One of the indictment, charging appellant with wearing, carrying, and transporting a handgun on or about his person. It was not, as in *Hebb,* a document including annotations and cites to other statutes likely to have confused the jury.

We conclude in this case that providing the jury with a written copy of the statutes, specifically C.L. § 4–203 concerning Count One of the indictment, was no different than providing a written copy of an oral jury instruction permitted by Rule 4–326(b). We explain.

Prior cases have held that a trial court may read a statute to the jury as part of its instructions to the jury:

It is without question that a trial court may read to the jury the applicable provisions of those statutes which pertain to the crime or crimes charged, and advise the jury that the legal effect of the evidence admitted at the trial is to undertake to bring the accused within the operation of such penal statutes.

*Dillon v. State,* 277 Md. 571, 582, 357 A.2d 360 (1976); *see also Pearlstein v. State,* 76 Md.App. 507, 517, 547 A.2d 645 (1988) (holding there was no error when, instead of giving instructions in the form requested by appellant, trial court read verbatim from the language of the statute), *cert. denied,* 314 Md. 497, 551 A.2d 867 (1989); *Cardin v. State,* 73 Md.App. 200, 219, 533 A.2d 928 (1987) (concluding that reading the statute was sufficient and stating that "the statutory language was not so technical or complicated as to confuse the jury, but instead was quite straightforward and lucid"), *cert. denied,* 312 Md. 126, 538 A.2d 777, *cert. denied,* 488 U.S. 827, 109 S.Ct. 78, 102 L.Ed.2d 55 (1988).

■ In the case at bar, the trial court thus could have read C.L. § 4–203, or portions thereof, to the jury during its initial instructions to the jury. That instruction could have been electronically recorded or otherwise reduced to writing and taken into the jury room under Maryland Rule 4–326(b), with permission of the trial court.[6] It follows then that the trial court could also respond to a jury note requesting a supplemental instruction by reading a statute and sending a written copy of that statute to the jury room during deliberations. Considering that the jury had expressed some "difficulty with the terminology" in their note, we hold that the trial court did not err by responding to the jury's request by sending a copy of the pertinent statute to the jury room.

■ Moreover, even if we were to conclude that the court erred, the error in this case was harmless beyond a reasonable doubt. *See Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976) (error will be harmless when reviewing court, upon independent review, is able to declare a belief beyond a reasonable doubt that there is no reasonable possibility that the error contributed to the verdict). In *Imes v. State*, 158 Md.App. 176, 855 A.2d 381, *cert. denied*, 384 Md. 158, 862 A.2d 994 (2004), a tape recorded interview of Imes' co-defendant was admitted into evidence. *Id.* at 181, 855 A.2d 381. A transcript was also handed to each juror so that they could follow along while the tape was played during trial. *Id.* Copies of the transcript were not retrieved from the jury, and several jurors took their copies into the jury room. *Id.* This Court concluded that the error in permitting jurors to take the unadmitted transcript into the jury room was harmless beyond a reasonable doubt. *Id.* at 183, 855 A.2d 381. In reaching that conclusion, we stated that "the transcript at issue in the case at bar 'only confirmed in writing what the jury already heard' in open court." *Id.* at 182, 855 A.2d 381 (quoting *Vaughn v. U.S.*, 367 A.2d 1291, 1295 n. 8 (D.C.1977)).

---

**6.** Based on our review of the record, it does not appear that the trial court provided written copies of the instructions to the jury.

Here, with respect to the wearing, carrying, and transporting a handgun counts, the court instructed the jury as follows:

The next crime for which both defendants are charged is transporting a handgun in a vehicle. Each defendant is charged, and this had to do with a gun, in order to convict the defendant, the State must prove, one, defendant wore, carried, or knowingly transported a handgun in a vehicle, and that the defendant did so while traveling on public roads, highways, waterways, airways, or parking lots.

A handgun is a pistol, revolver, or other firearm capable of being concealed on or about the person and which is designed to fire a bullet by the explosion of gunpowder.

Another count which is somewhat redundant, is wear, carry, or transporting a handgun. In order to prove the defendant wore, carried, or transported a handgun on or about his person, a handgun is a pistol, revolver, or other firearm capable of being concealed on or about the person and which is designed to fire a bullet by explosion of gunpowder. A handgun is on or about a person which is within his reach and available for that person's immediate use.

In addition, the court explained this count further when it stated:

So wear means like wear your clothes. Carry means like I'm carrying a basket of laundry. Transport means to move from one place to another. So these two crimes here are addressed. One is on the person. Did either of these people wear, carry, transport a handgun on their person. And then because people can have stuff in their vehicle that they're transporting that they don't know about.

They made the element a little bit stronger and they said in order to convict somebody of having something in their vehicle, you have to wear, carry, or knowingly transport the item in the vehicle. So those are the, which we call the "out in public" verbs.

Similarly, there is little difference between these instructions and the copy of C.L. § 4–203 provided to the jury.

Moreover, the court gave additional instructions in response to the jury note and specifically informed them that, whereas the statute used the word "or," in describing the crime of wear, carry, or transport a handgun, "the State has assumed a greater burden than the Statute requires because it's charged the Defendants with wearing, carrying *and* transporting a handgun." (Emphasis added). Accordingly, the copy of the statute confirmed in writing what the jury had already heard when the trial court instructed the jury, and any error was harmless beyond a reasonable doubt.

## III.

Finally, appellant asserts that the evidence was insufficient to sustain his conviction for wearing, carrying, or transporting a handgun on or about his person because the gun was found underneath the passenger seat and therefore was not "in such proximity to him as would make it available for his immediate use." The State responds that this argument is meritless and that it was for the jury to determine whether appellant was in possession of the handgun. We concur.[7]

In deciding any claim relating to the sufficiency of the evidence, the appropriate inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *accord State v. Smith,* 374 Md. 527, 533, 823 A.2d 664 (2003). *"[A]ll of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *accord Bible v. State,* 411 Md. 138, 156, 982 A.2d 348 (2009). A purpose of this rule is to give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,*

---

**7.** Appellant does not challenge his conviction for carrying a concealed and dangerous weapon, *i.e.,* the knife found near the driver's side seat.

443 U.S. at 319, 99 S.Ct. 2781. Further, "[a] valid conviction may be based solely on circumstantial evidence." *Smith*, 374 Md. at 534, 823 A.2d 664. Additionally, "[w]eighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder." *Id.* at 533–34, 823 A.2d 664; *see also Bible*, 411 Md. at 156, 982 A.2d 348 (stating "[the appellate court] must give deference to all reasonable inferences [that] the fact-finder draws, regardless of whether [the appellate court] would have chosen a different reasonable inference" (citation omitted)); *Sifrit v. State*, 383 Md. 116, 135, 857 A.2d 88 (2004) (the jury is "free to believe some, all, or none of the evidence presented").

■■■ As discussed previously, C.L. § 4–203 prohibits the wearing, carrying or transporting of a handgun, whether concealed or open, on or about the person. A weapon is "about" a person if it is "in such proximity . . . as would make it available for [ ] immediate use." *Corbin v. State*, 237 Md. 486, 491, 206 A.2d 809 (1965).

In addition, the Court of Appeals has held that, in order to support a conviction for a possessory offense, the "evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited narcotic drug in the sense contemplated by the statute, *i.e.*, that [the accused] exercised some restraining or directing influence over it." *Garrison v. State*, 272 Md. 123, 142, 321 A.2d 767 (1974); *accord State v. Suddith*, 379 Md. 425, 432, 842 A.2d 716 (2004).[8] "The accused, in order to be found guilty, must know of both the presence and the general character or illicit nature of the substance. Of course, such knowledge can be proven by circumstantial evidence and by

---

8. In *State v. Smith*, 374 Md. 527, 549, 823 A.2d 664 (2003), the Court of Appeals acknowledged that cases dealing with the illegal possession of narcotics might assist the analysis of cases involving handguns, specifically, transporting a handgun, stating "because to prove possession in those types of cases, actual or constructive dominion or control over the contraband must be proven and knowledge, generally, may be evidence in the determination of dominion and control."

inferences drawn therefrom." *Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041 (1988).

Possession may be constructive or actual, exclusive or joint. *See Moye v. State*, 369 Md. 2, 14, 796 A.2d 821 (2002); *see also Burns v. State*, 149 Md.App. 526, 546, 817 A.2d 885 (2003) (concluding that whether defendant was in possession of a handgun found under a seat in a vehicle depends upon whether jury could find he was in actual, constructive, joint, or exclusive possession); *McDonald v. State*, 141 Md.App. 371, 379–80, 785 A.2d 836 (2001) (holding that jury could find that appellant was in constructive possession of the weapon). "It has long been established that the mere fact that the contraband is not found on the defendant's person does not necessarily preclude an inference by the trier of fact that the defendant had possession of the contraband." *Suddith*, 379 Md. at 432, 842 A.2d 716.

Here, in addition to finding a knife in appellant's vehicle that appellant claimed he kept for both "fishing" and "protection," Officer Simmons recovered a loaded .38 caliber revolver underneath the passenger side seat of the vehicle appellant was driving. The butt of that handgun was facing outward towards the passenger seat. Officer Simmons also agreed with the prosecutor's question that a person located either in the driver's side seat or the passenger's side seat could "reach either of the weapons as they were recovered on June 23rd, 2007."

In addition to these facts, as noted, appellant was the driver of the vehicle. The Court of Appeals has stated that "owners/drivers of vehicles are perceived to have heightened control over the contents of their vehicles." *State v. Smith*, 374 Md. at 551, 823 A.2d 664 (citing *State v. Wallace*, 372 Md. 137, 812 A.2d 291 (2002)). Further, "[a] rational fact-finder may infer that, generally, an owner/driver of a vehicle has knowledge of the contents of that vehicle." *Smith*, 374 Md. at 559, 823 A.2d 664.

From this evidence, we conclude that a rational juror could find that appellant had knowledge of, as well as dominion and

control over, the gun recovered underneath the passenger seat in the vehicle he was driving. Moreover, the loaded gun was in close proximity to appellant's person and was available for immediate use. Thus, the evidence was sufficient to sustain appellant's conviction.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**